## Szilagyi et al., Appellants, *v.* Bethlehem.

Argued April 17, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*Herbert J. Hartzog,* for appellants.—The provisions of the Act of May 28, 1929, P. L. 106, impose an imperative statutory duty upon the municipal corporation itself.

The function of a municipality to require an additional bond for the protection of subcontractors and materialmen is private and corporate, and not public or governmental: Erie v. Schwingle, 22 Pa. 384; Western Saving Fund v. Phila., 31 Pa. 175; McDade v. Chester City, 117 Pa. 414; Betham v. Phila., 196 Pa. 302; Scibilia v. Phila., 279 Pa. 549; Brooks v. Buckley & Banks, 291 Pa. 1; Kelley v. Cumberland Co., 229 Pa. 289.

*Daniel L. McCarthy,* for appellee.—The Act of Assembly, on which plaintiffs rely, imposing a duty on a city to require an additional bond from a contractor employed in the erection, alteration, addition or repair of roads, bridges, edifices, and public buildings in the city, for the protection of laborers and materialmen, does not by its terms impose any liability on a city for its failure to comply with the provisions thereof: Gratz v. Ins. Co., 282 Pa. 224; Davidson v. Bright, 267 Pa. 580; Zimmerman v. Coal Co., 286 Pa. 108.

It is well established in Pennsylvania that no action lies against a municipality to recover damages for negligence of officers or employees in the performance of a duty if the service was of a governmental character, delegated to the municipality to be performed on behalf of the sovereign state: Devers v. Scranton, 308 Pa. 13; Scibilia v. Phila., 279 Pa. 549; Balashaitis v. County, 296 Pa. 83; Collins v. Com., 262 Pa. 572.

The defendant city in constructing portions of state highways within its corporate limits was exercising a governmental function delegated to it to be performed on behalf of the state: Greene Co. v. Twp., 305 Pa. 79; Lancaster v. Frescoln, 203 Pa. 640; Sax v. School Dist., 237 Pa. 68.

OPINION BY MR. JUSTICE KEPHART, June 30, 1933:

The City of Bethlehem contracted with the Rathbun Company for the improvement of two city streets. The contractor gave one bond for each contract, but the bonds did not include labor and materialmen as obligees or potential use-plaintiffs, nor did the city require an additional bond for the payment of labor, material and machinery used. The contractor became bankrupt and failed to pay the appellants who furnished materials to the contractor. This suit was instituted in trespass against the city to recover damages arising out of the neglect of the city to obtain the additional bond. The city, by affidavit of defense, raised the question of law that it was not liable to plaintiffs as it was acting in a governmental capacity. The court below sustained its legal position and this appeal followed.

It is contended that the various acts of assembly requiring municipalities to secure an additional bond for the protection of labor, materialmen and machinery, impose an imperative statutory duty on the municipality which it, and not its officers, is obligated to perform; in failing to procure an additional bond the city was guilty of wilful misfeasance as well as nonfeasance; the func-

tion of procuring an additional bond is a private or corporate rather than a governmental duty, and the failure to procure it, through the act of its authorized agents, causes the city to be liable in damages for the nonperformance of this duty.

The Act of May 10, 1917, P. L. 158, required cities in the erection of public buildings to procure an additional bond which would provide for the payment of labor and materialmen who are employed on the improvement. The Act of May 6, 1925, P. L. 546, provided that it *should be the duty* of cities, etc., to secure the additional bond. These acts, however, were not deemed broad enough to cover all the contingencies of a contractor's failure to pay labor and materialmen. Accordingly, the Act of March 28, 1929, P. L. 106, was enacted, providing: "That it shall be the duty of......counties......in the erection......of roads, bridges, edifices and public buildings......to require of the contractor......an additional bond......providing for the payment of" labor, materialmen and for machinery. These acts speak in the terms of a command to the respective municipalities, and the duty is imposed on them to secure an additional bond which shall provide for the payment of labor, materialmen and for machinery used in and about the work.

We considered these several acts in Sundheim, Receiver, v. Philadelphia School District, 311 Pa. 90, and in reviewing them and the liability of municipalities for the payment of labor and materialmen of the contractor, it was stated: "Ordinarily, and at common law, the owner [municipality or other subdivision of government] is under no liability in a contractual sense, nor is......[it] under any duty [at common law] to pay, nor may......[its] property be subjected to payment of labor and materialmen of the contractor...... Property of municipalities, school districts and the like are exempt from such liability. A mechanics lien or attachment in the nature thereof cannot be filed against property belonging to these agencies of government." On

page six, it is stated: "......the two bonds......[that were required to be given] one for the protection in construction, [and] the other for the benefit of labor and materialmen, [are] two distinct and separate obligations...... But......neither bond changed the common law status of the owner [municipality] as it related to the contractor's employees or materialmen." After citing many cases, we said: "These cases clearly show a municipality has no duty to see that labor and materialmen are paid......" In construing the real purpose of the acts in question, we there stated: "The legislature has, however, seen fit to protect labor and materialmen engaged by a contractor in the erection of public buildings or doing public work, by requiring the contractor to give a bond to protect them." The legislature in due recognition of services connected with public works deemed it expedient to establish as part of the public policy of the Commonwealth that labor and materialmen should receive additional protection in the matter of compensation for such services to that heretofore given; as their labor and materials went into the construction of state or municipally owned property, they should have some guarantee for payment beyond that of the contractor. It therefore required the additional bond to be given by the contractor. Neither bond was in fact necessary for the actual accomplishment of the particular undertaking, here the construction of a street. The requirement of the additional bond was purely an act of government, a protective measure for the betterment of a substantial part of the public, that is, persons who worked or provided materials for public works. The public generally would be assured that all elements contributory to its buildings, roads, and public works were paid for and no complaint could be lodged against the government that the means had not been afforded to provide for payment of labor or material connected therewith.

The legislature committed the fulfillment of this public policy to the authorities of the various municipalities. It did not prescribe any penalty for their failure to act, nor did it impose any liability on the municipality if anyone should suffer loss by such failure; but there is always a remedy to enforce performance of a public duty. It was within the power of those who dealt with the contractor to see that protection was procured, even though the additional bond was not given when their contracts were executed. Where a county, city, borough, town, township, school district, or poor district fails to require a contractor employed in and about the erection, alteration, addition or repair of roads, bridges, edifices and public buildings to secure an additional bond as required by law for the payment of labor, material and machinery, the courts will compel the performance of this public duty by mandamus. See Walthour v. McDowell, 109 Pa. Superior Ct. 118.

Appellants urge, however, that as the contract was for the construction of a street, the particular duty (to secure an additional bond) as it related to this object (construction of street) was corporate and not public, for the reason the city was interested in extending its territory, increasing its population, bringing in new industries, and, in the interest of its inhabitants in promoting the comfort, happiness and welfare of the citizens within its corporate limits. They argue that these accretions mean more patronage for its municipal utilities, more money circulating within its borders, more taxes for better streets, parks and public buildings, better homes, churches and schools, and that where these powers and functions are granted to it for the specific benefit and advantage of the urban community embraced within its corporate boundaries, such functions are purely corporate in character, and, therefore, the failure to perform the duty entailed liability.

There is scarcely any duty devolving on a city that cannot be finally reasoned to this conclusion, and all

our cases which have decided against appellants' contention would be in error. We have held that a city is not liable for damages from the negligence of its employees, members of the police or fire departments, because they were in performance of a service of a governmental character: Devers v. Scranton City, 308 Pa. 13; and so where a truck owned by a city and operated by its employee injured a pedestrian while it was performing the service of collecting ashes in and about the city: Scibilia v. Phila., 279 Pa. 549; similarly where a pedestrian was injured by a county truck transporting men to work: Balashaitis v. Lackawanna Co., 296 Pa. 83. See also Steele v. McKeesport, 298 Pa. 116. The legislature has *since* seen fit to impose liability occurring from the negligent operation of a motor vehicle on the highway: Act of 1929, P. L. 905, section 619, as amended by Act of 1931, P. L. 751.

In the following cases the implication of liability was stronger than that in the instant case, yet recovery was denied on grounds of public policy: Murdock Parlor Grate Co. v. Com., 152 Mass. 88, 24 N. E. 854; Gibbons v. U. S., 6 Wallace 269, 75 U. S. 269. See also Bourn v. Hart, 93 Cal. 321, 28 Pac. 651.

Appellants, however, urge that as a city may be held liable to a pedestrian for defective street construction or failure to maintain and repair, there is no just reason why it should not be held liable for failure to perform an important step in the undertaking, to wit, failure to procure an additional bond to protect labor and materialmen connected with its building, this being a duty imposed by statute.

The obligations in the respective cases are vastly different. As to procuring a bond, it was a matter of indifference to the state, from a purely selfish viewpoint, as to whether these claims were secured or not. The bonds give security generally to anybody whose dealings are within the scope of the bond whether they live in the city or elsewhere, and the common law rule is that mu-

nicipalities are not in any way responsible for the payment by a contractor of labor and materialmen. Statutes are not presumed to make any change in common law rules and principles beyond that which is expressly declared in their provisions. As quoted in Davidson v. Bright, 267 Pa. 580, 589, from Cadbury v. Duval, 10 Pa. 265, 270: "Legislative enactments are to be expounded as near to the use and reason of the prior law as may be, when this can be done without violation of its obvious meaning;......it is not to be presumed the legislature intended to make any innovation upon the common law, further than the case absolutely requires."

The effect of appellants' argument would be to make the city liable for the payment of labor and materialmen through the Acts of Assembly referred to, though the statute created no such liability, and though such liability never existed at common law.

As to the liability of a municipality for failure to maintain and repair streets, the same comparative reasoning in support of liability in the present case was presented in the foregoing cases holding no liability, particularly in the Scibilia case, supra. It and other cases contain a full review of the subject of governmental functions and need not be repeated. The ruling as to liability for accident through failure to maintain and repair, as the cases show, is purely a matter of legislative intent and purpose to impose liability on the various subdivisions of government. It was so decided in an early case (Dean v. New Milford Twp., 5 W. & S. 545), and required a constitutional provision to create a remedy for an undoubted wrong committed in the construction of a highway.

In all such cases, it was held that for the negligent execution of the power to construct and repair, the municipality was liable for the direct consequences of such neglect. It was in the nature of a special injury. Here the negligent act is in no way connected with or related to the work of construction. We stated in Greene Co.

v. Center Twp., 305 Pa. 79, at page 86, "The highways of the Commonwealth, apart from those owned privately, such as turnpikes, are the property of the State. It may set up within constitutional limitations any agency it sees fit to improve, maintain, repair, administer and control them." Our late Brother SADLER, in Garr et al. v. Fuls et al., 286 Pa. 137, at page 145, stated: " 'A county organization is created almost exclusively with a view to the policy of the state at large [with respect to highways] . . . . . . With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are in fact but a branch of the general administration of that policy': Freeze v. Columbia Co., 6 W. N. C. 145, 146." And, in the building of roads, it is acting in its governmental, rather than business, capacity. Townships are in the same situation as counties with respect to roads. See Cheltenham Twp. v. P. R. T. Co., 292 Pa. 384, and North Middleton Twp. v. Weary, 78 Pa. Superior Ct. 503. Cities and boroughs with respect to highways are similar to counties and townships as discussed in this opinion.

The act of procuring a bond was extraneous to the particular power herein involved. It was incidental to its performance, and was not directly involved in the construction, repair and maintenance of a highway. The duty to procure it was governmental, and the legislation provided no penalty for such failure. Neglect to perform will not impose liability on the city.

Appellants say there was a conspiracy among the officers not to procure the additional bond. If this condition of affairs really existed, it might become very important as between the officers and the subcontractors or materialmen who had not been paid, but it does not in the least strengthen their position in this action against the city, nor would the question of their good faith in acting for the best interest of the city aid.

Judgment of the court below is affirmed.