CITY OF PHILADELPHIA, to Use of WARNER CO., v. NATIONAL SURETY CORPORATION et al.

Civ. No. 1449.

District Court, E. D. Pennsylvania.

Dec. 29, 1942.

---

382

Edward H. Cushman, of Philadelphia, Pa., for use-plaintiff.

Conlen, LaBrum & Beechwood, of Philadelphia, Pa. (George E. Beechwood, of Philadelphia, Pa., of counsel), for defendant and third-party plaintiff.

Ernest Lowengrund, Acting City·Sol., and Samuel Feldman, Asst. City Sol., both

of Philadelphia, Pa., for third-party defendant.

KALODNER, District Judge.

During the period between June 1927 and June 1931 the City of Philadelphia entered into a number of contracts with the Municipal Construction Company, Incorporated, a Pennsylvania corporation, under the terms of which the latter agreed to furnish and supply labor and material for the paving of a number of streets and highways in the said city. The contracts contained a provision to the effect that the contractor was to keep the paving in good condition and repair for a certain specified time.

Portions of the paving work done by this contractor, as asserted by the city, proved to be defective, and the city was compelled to undergo expenses of $10,661.49 in repair and replacement.

Meanwhile the said contractor, Municipal Construction Company, Inc., ceased active operation, and the Union Indemnity Company, the surety on the contractor's bond, went into receivership.

The city instituted suit against the ancillary receivers of the Union Indemnity Company in the Court of Common Pleas of Philadelphia County for the recovery of its expenditures for repair and replacement, and this suit is still pending in the state court.

Some time during the years 1938 and 1939 the City of Philadelphia advertised for other bids for paving, and awarded four contracts to the Municipal Construction Company, Inc., which had recommenced active operation of its business. In each of these latter contracts the Municipal Construction Company, Inc., furnished the city an "additional bond" for the payment of labor and materials entering into these contracts, as required by statute and ordinance. These bonds were executed by the National Surety Corporation, a New York corporation, the primary defendant herein.

By reason of the city's claim against the Municipal Construction Company, Inc., in the amount of $10,661.49 for the costs incurred in repairing and replacing the alleged defective paving, of the original contracts abovementioned, the city has retained from the amount due to the Municipal Construction Company, Inc., on account of the last four contracts, the sum

of $12,434.79 pending determination of its suit against the Contruction Company and the Union Indemnity Company. (The latter sum apparently includes interest on the city's claim.)

Subsequently, on October 25, 1941, the Warner Company, a Delaware corporation, instituted a civil action in this court (the action was originally instituted in the Common Pleas Court of ·Philadelphia County but was transferred to this court) against the National Surety Corporation, the surety on the last four mentioned contracts, for the Municipal Construction Company, to recover the sum of $12,479.94 for material furnished which entered into the paving under the four contracts between the Municipal Construction Company and the City of Philadelphia.

Thereupon, the National Surety Corporation summoned the City of Philadelphia as a third-party defendant, setting forth the above-recited facts in its complaint, and alleging that the city was liable over to it for the amount of the claim of the Warner Company.

The City of Philadelphia, without answering the averments, filed an answer to the third-party complaint, raising questions of law. Subsequently, the Warner Company, the use-plaintiff, amended its complaint making its claim in the alternative against the city and the National Surety Corporation.

The complaint avers the existence of two city ordinances, one approved March 10, 1879, providing that the heads of the several departments of the city award no contract to any party who had previously defaulted in work or·materials on any prior contract; the other, dated April 4, 1882, authorizing and directing the heads of the departments of the city not to receive any bid or award any contract to any person who refused to comply with his bid or had defaulted in the performance of his contract with any of the departments of the city (these two ordinances are set forth below).[1]

The basis upon which the National Surety Corporation seeks to impose liability against the city is the failure by the city's officers and employees to carry out the provisions of the aforesaid two city ordinances, which purportedly require the heads of the various departments to "blacklist" the defaulting contractors.

■ The enactment and enforcement of ordinances are unquestionably the exercise of a governmental function. Szilagyi v. Bethlehem, 312 Pa. 260, 167 A. 782; Whittaker v. Franklinville, 265 N.Y. 11, 191 N.E. 716, 93 A.L.R. 1351; Gilchrist v. Charleston, 115 S.C. 367, 105 S.E. 741; Jones v. Williamsburg, 97 Va. 722, 34 S.E. 883, 47 L.R.A. 294.

■ In the exercise of governmental functions the municipality acts as the agen-

[1] Ordinance of March 10, 1879:

"Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That the heads of the several departments of the City, of Philadelphia be, and are, hereby authorized and directed to award no contract for work or materials to any party or parties who have previously defaulted in their payments for either work or materials on any previous contract with the City of Philadelphia.

"Section 2. All ordinances or parts of ordinances inconsistent herewith be, and the same are, hereby repealed."

Ordinance of April 4, 1882:

"Section 1. The Select and Common Councils of the City of Philadelphia do ordain, That the Heads of the several Departments of the City of Philadelphia be and they are hereby authorized and directed not to receive or schedule any bid or award any contract for work or materials to any person who hereafter or heretofore shall have refused to comply with his bid or shall have defaulted in the performance of his contract with any of the Departments of the City.

"Section 2. That it shall be the duty of the Heads of every Department of the City to keep a book in which shall be entered the name of every contractor who has defaulted in his payments for work or materials since the passage of the ordinance of March 10, 1879, or who shall have refused to comply with his bid or shall have defaulted in the performance of his contract with any of the Departments of the City after the passage of this ordinance; which books shall be open at all times for the inspection of all persons desiring information.

"Section 3. That it shall be the duty of the Heads of every Department in which such refusal or defalcation has occurred, or hereafter shall occur, to immediately officially notify thereof the heads of all the other Departments of the City, who shall, each of them, enter on their respective books the name and residence of every such bidder or contractor."

cy for the sovereign state and hence the principles of law invoked by the courts in adjudicating questions involving the rights of individuals and the state when engaged in the exercise of the governmental functions are equally applicable to municipalities in performing such functions. Thus it was said in Schuylkill County v. Com., 36 Pa. 524: "The Commonwealth is not to suffer by the laches of its agent, nor can the County of Schuylkill obtain a discharge from its liability because the state treasurer was not vigilant," citing United States v. Kirkpatrick, infra. See also Commonwealth v. Brice, 22 Pa. 211, 60 Am.Dec. 79; United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199.

In Szilagyi v. Bethlehem, supra, an action of trespass had been instituted against the City of Bethlehem for failure to procure laborers' and materialmen's bonds. The court held that in the construction, maintenance and repair of highways a municipality is acting in its governmental rather than its business capacity and its statutory duty to procure a bond for the protection of labor and materialmen on such construction is governmental.

So it has been uniformly held that the municipality is not liable for negligence of its officers or employees in the performance of a duty, if the service was of a governmental character delegated to the municipality and performed on behalf of the sovereign state. Devers v. Scranton, 308 Pa. 13, 161 A. 540, 85 A.L.R. 692; Scibilia v. Philadelphia, 279 Pa. 549, 124 A. 273, 32 A.L.R. 981; Balashaitis v. County, 296 Pa. 83, 145 A. 691; Collins v. Com., 262 Pa. 572, 106 A. 229.

This is the answer to the plaintiff's assertion of laches of and estoppel against the municipality, and distinguishes the cases cited by plaintiff.

Furthermore, it is even questionable if the plaintiff was deceived by "a factual misrepresentation that Municipal (Construction Company) was not a defaulter" (it is so averred in the complaint). According to the ordinance, the "blacklist" is a public record, and its inspection was available to everyone, including the plaintiff and primary defendant.

It should also be noted that the city is under no obligation to see to it that the labor and materialmen on the contract are paid. Philadelphia to Use v. Mc-Linden, 205 Pa. 172, 54 A. 719. In that case the Supreme Court of Pennsylvania has said (page 176 of 205 Pa., page 720 of 54 A.): "The power of the city to exact the additional bond was upheld in Philadelphia v. Stewart, 195 Pa. 309, 45 A. 1056, in which it was decided that the condition was not ultra vires and contrary to public policy, as it was the right of the city to protect itself against the risk of defective materials and workmanship in the construction of its public works, against which there is no right of lien, by exacting assurance from the contractor that he will pay the debts which he incurs."

The Supreme Court further said (page 176 of 205 Pa., page 720 of 54 A.): " * * * The city was under no obligation to pay the claimants, nor to see that they were paid. They had no claim upon the fund in its possession which could be enforced, and the city could not retain the money in order that the creditors of the contractor or his surety could reach it by any process. Lesley v. Kite, 192 Pa. 268, 43 A. 959. The city had no direct financial interest in the bond, for, although it was a nominal plaintiff, it was merely a trustee for those who might beome beneficially interested. Philadelphia v. Stewart, 201 Pa. 526, 51 A. 348. It is equally clear that the surety cannot set up the violation of the law and of the contract forbidding the employment of alien labor by its principal as a defense in an action on the bond."

In Sundheim v. Philadelphia School District, 311 Pa. 90, 99, 166 A. 365, 368, the Supreme Court of Pennsylvania ruled: "These cases [cited] clearly show a municipality has no duty to see that labor and materialmen are paid and the labor and materialmen themselves have no preference or claim to the retained percentages. Therefore, the surety whose rights rise no higher than those of labor or materialmen can have no right of subrogation to money in the owner's hands as retained percentages."

In Szilagyi v. Bethlehem, supra, it was pointed out that the city was not liable for its neglect to procure the laborers' and materialmen's bonds.

Indeed, it has even been held by the Supreme Court of Pennsylvania that the municipality may not provide by ordinance a remedy whereby subcontractors might enforce payments of their claims out of the money in the hands of the city due the

principal contractor. Lesley v. Kite, 192 Pa. 268, 43 A. 959.

For the reasons stated, the motion of the City of Philadelphia (third-party defendant) to dismiss the complaint against it by the National Surety Corporation (third-party plaintiff) is granted; and the said complaint is accordingly dismissed.