CITY OF PHILADELPHIA, to Use of WAR-
NER CO., v. NATIONAL SURETY COR-
PORATION (CITY OF PHILADELPHIA,
Third-Party Defendant).

NATIONAL SURETY CORPORATION v.
CITY OF PHILADELPHIA.

No. 8321.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 5, 1943.

Decided Jan. 27, 1944.

George E. Beechwood, of Philadelphia,
Pa. (Conlen, La Brum & Beechwood, of
Philadelphia, Pa., on the brief), for appel-
lant.

Samuel Feldman, of Philadelphia, Pa.
(Robert McCay Green, of Philadelphia, Pa.,
on the brief), for appellee.

Before BIGGS, JONES, and GOOD-RICH, Circuit Judges.

BIGGS, Circuit Judge.

In the years from 1927 to 1931 the City of Philadelphia, a first class city of the Commonwealth of Pennsylvania, entered into contracts with Municipal Construction Company, Inc., a Pennsylvania corporation, hereinafter called Municipal, for the paving, maintenance and repair of certain streets in Philadelphia. In connection with each contract Municipal executed a bond with Union Indemnity Company, a Louisiana corporation, as surety, to secure the faithful performance of the terms of the contract. In 1931, while Municipal was still obligated to maintain and repair the pavements covered by the contracts, Municipal "ceased active operations".[1] Union Indemnity was placed in receivership in 1932. The City gave notice to Municipal and to Union to carry out the maintenance provisions of the contracts and upon the failure of Municipal and Union to fulfill their obligations, the City performed the maintenance work itself at a cost of $10,-061.49. A suit was brought by the City against the surviving ancillary receiver of Union Indemnity Company in the Court of Common Pleas of Philadelphia County to recover the sum expended. This suit is still pending.[2]

In 1879, the Select and Common Councils of Philadelphia passed an ordinance directing the heads of the several departments of the City to award no contract for work or materials to any contractor who had defaulted in payment for either work or materials on a city contract, Ordinances of the City of Philedlphia, 1879, p. 38. This prohibition was sought to be implemented by another ordinance passed on April 4, 1882, Ordinances of the City of Philadelphia, 1882, p. 108, the latter ordinance providing that the heads of the departments of the City were to keep a book in which should be entered the name of each defaulting contractor and that this book should be open for the inspection of all persons desiring information.

Despite the fact that Municipal was a defaulting contractor, the City on and after September 30, 1938 entered into five more contracts with Municipal for the paving, repair or alteration of city streets. Municipal was required to execute and deliver to the City performance and "additional" bonds with corporate surety to secure these contracts. National Surety Corporation, a New York corporation, was the corporate surety. After the work upon the five new contracts had been accepted by the City, the City withheld the sum of $13,281.47[3] from Municipal in order to reimburse itself with interest for its expenditures in completing the work covered by the contracts entered into by the City with Municipal from 1927 to 1931.

One of the subcontractors on the five contracts entered into by the City with Municipal on and after September 30, 1938 was Warner Company, a Delaware corporation, which had furnished materials as a subcontractor. Municipal did not pay Warner Company $12,479.94 which was due it and Warner Company demanded payment from National Surety. National Surety did not pay Warner Company and that company brought suit in the name of the City of Philadelphia to its use against the National Surety in the Court of Common Pleas of Philadelphia County[4] to recover upon the five additional bonds. The case was removed to the District Court of the United States for the Eastern District of Pennsylvania, apparently on the ground of the diversity of citizenship of the parties. National Surety then summoned the City as a third-party defendant, alleging in its complaint (1) that the course of conduct of the City in accepting Municipal as a contractor in violation of the ordinance of April 8, 1882 resulted in a fraud upon it causing it damage in the amount of $12,437.79, the amount claimed by Warner Company, (2) that each of the written applications and indemnity agreements secured by it from Municipal when the bonds were executed contained clauses which effected assignments to National Surety from Municipal of all "* * * the deferred payments and retained percentages, and any and all money and properties that may be due and payable to the undersigned at the time of any breach or default in said contract or that thereafter

---

[1] The quotation is from the third paragraph of the original third-party complaint.

[2] At No. 2199, March Term, 1939.

[3] The appellant in its brief alleges that the city withheld $13,520.52. The amount set up in the ad damnum clauses of the third party complaint is $12,437.79. However, the exact sum is immaterial to the issues before us.

[4] At No. 2489, September Term, 1940.

may become due and payable to * * * [Municipal] on account of said contract or on account of any extra work or materials supplied in connection therewith, [Municipal] hereby agreeing that such money, and the proceeds of such payments and properties shall be the sole property of * * * [National Surety] and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it in connection with said bond.", and (3) that the City by reason of its "factual misrepresentation" that Municipal was not a defaulter is estopped from withholding any part of the contract prices or from asserting any right of set-off against moneys due from the City to Municipal on contracts for which National Surety had executed performance and additional bonds.

The City filed an answer to the third-party complaint praying that it be dismissed on the ground that it failed to disclose any cause of action arising out of the controversy set forth in the original complaint. Warner Company then amended its complaint seeking recovery in the alternative from the City or from National Surety.

The court below granted the City's motion to dismiss, holding, inter alia (1) that the City could not be held liable for the negligence of its officers who had acted in derogation of the ordinances referred to, (2) that there could be no estoppel against the municipality in the circumstances which we have narrated, (3) that it was "questionable" if National Surety was deceived by a factual misrepresentation that Municipal was not a defaulter, and (4) that the City was under no obligation to see that materialmen were paid the sums due them under contracts executed by the City for municipal works. See the opinion of Judge Kalodner, 48 F.Supp. 381–385.

The judgment of the court below must be affirmed. Rule 14(a) of the Rules of Civil Procedure, relating to Third-Party Practice, 28 U.S.C.A. following section 723c, provides that a defendant may bring a third party as a third-party defendant into an existing suit by serving "* * * a summons and complaint upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him". It follows that in order for National Surety to avail itself of the benefits of the rule it is necessary that the City be liable either to National Surety or to the Warner Company for all or part of Warner Company's claim against National Surety.

As we have stated Warner Company was a materialman who furnished materials to the five jobs covered by the contracts let to Municipal on or after September 30, 1938. Under the law of Pennsylvania a municipal corporation such as the City of Philadelphia has no obligation to pay materialmen. A municipality is liable to the contractor but not to a subcontractor, a materialman or a laborer. City of Philadelphia v. Stewart, 201 Pa. 526, 532, 51 A. 348, 350; City of Philadelphia to Use of McFarland v. McLinden et al., 205 Pa. 172, 176, 54 A. 719, 720; Lesley v. Kite, 192 Pa. 268, 43 A. 959. The "additional" bonds covering the five contracts were executed by National Surety pursuant to the provisions of the two Pennsylvania statutes of June 22, 1931, P.L. 880 and P.L. 881, 53 P.S.Pa. §§ 523 et seq. and 525 et seq., as well as of an ordinance of the City of Philadelphia approved July 11, 1932, Ordinances of the City of Philadelphia and Opinions of the City Solicitor, 1932, p. 109. It is well settled that such so-called "additional" bonds are for the benefit of materialmen and laborers. City of Philadelphia v. Stewart, supra; City of Philadelphia, to Use of McFarland v. McLinden et al., supra.[5] Moreover, if the surety upon an

---

[5] The different natures of the construction bond and the so-called "additional" bond are well illustrated by the words of Justice Kephart in Sundheim v. Philadelphia School Dist., 311 Pa. 90, 97, 98, 166 A. 365, 368. Justice Kephart said, "When the two bonds were given to the school district, one for protection in construction, the other for the benefit of labor and materialmen, two distinct and separate obligations were then in effect. School District of the Borough of Eddystone v. Lewis, 98 Pa.Super. 227. See Concrete Products Co. v. United States Fidelity & Guaranty Co., 310 Pa. [158], 159, 165 A. 492. But, * * * neither bond changed the common-law status [of non-liability] of the owner as it related to the contractor's employees or materialmen. * * *

"There was no obligation in the construction bonds, or the construction contracts to pay labor and materialmen. Therefore, the failure to pay labor and materialmen standing alone did not breach either of these instruments. Nor was it intended by the Acts of 1917 [Act of May 10, 1917, P.L. 158] and 1925

"additional" bond pays the claim of materialmen it can acquire no right of subrogation against the municipality for the surety's rights rise no higher than those of the materialman who himself has no right to money in the owner's hands as retained percentages or a claim against the owner. DuBois v. United States Fidelity & Guaranty Co., 341 Pa. 85, 90–93, 18 A.2d 802, 804, 805. National Surety therefore cannot bring itself within the provisions of Rule 14(a). Even if it pays the claims due to Warner Company it acquires no right against the City of Philadelphia by subrogation. It could receive no more by the assignments which Municipal assertedly executed in its favor, for all that Municipal gave or could give to National Surety by these assignments was its right to collect from the City the sum withheld. This could not include Warner Company's claim against National Surety or any part of it. Thus, on any theory, National Surety fails to meet the test laid down by Rule 14(a).

■ The claim which National Surety asserts in its third-party complaint that it was deceived or misled into writing the construction and "additional" bonds because of the fraud of the City, obviously cannot be maintained in the present suit. This claim is one which National Surety has against the City. It is and can be no part of Warner Company's claim against National Surety.

■ As to the allegations of the third-party complaint [6] that the City "by reason of its flagrant and continued violation of the ordinance of April 4, 1882, which gave rise to a factual misrepresentation that Municipal was not a defaulter, [is] estopped as against National Surety Corporation, surety under contracts of Municipal, to withhold any part of the contract price or to assert a right of set-off against the money due Municipal under contracts for which National Surety Corporation executed performance and laborers' and materialmen's bonds.", it will be observed that this estoppel, if it exists, could be asserted by National Surety only as a defense if the City should claim in its answer to the third-party complaint that it, the City, had the right to retain the sum of $12,439.79. By these allegations National Surety has merely anticipated a defense which the City conceivably might assert. But in our opinion there could be no estoppel under the circumstances. In the case of Szilagyi v. City of Bethlehem, 312 Pa. 260, 167 A. 782, the City of Bethlehem had neglected to secure an additional bond for the payment of labor and materialmen as required by the Act of May 6, 1925, P.L. 546, as amended, 53 P.S.Pa. § 525, and a suit was brought by materialmen against the city to recover damages resulting from the city's failure to protect them as required by the statute. The Supreme Court of Pennsylvania held that the duty to procure the additional bond was governmental; that neglect to secure the bond did not impose a liability upon the city and this was true even though there was a conspiracy among the city officials not to procure the bond. The analogy is plain.

National Surety also alleges in part of its third-party complaint [7] that under the principles of equity and the doctrine of marshaling of assets the City is obliged to look to a special fund deposited in escrow by Union Indemnity for the satisfaction of claims arising upon surety bonds given by Union Indemnity. We understand that National Surety does not press seriously this point on appeal. But in any

[Act of May 6, 1925, P.L. 546] that their provisions should become a part of such contracts so as to make such failure a default under these instruments. The acts simply required an 'additional bond' for the protection of labor and materialmen and it was under that obligation the surety was required to pay. The contractor's obligation to pay labor and materialmen came through the agreements between the contractor and such claimants. * * * "

The Acts of 1917 and 1925 (Act of May 10, 1917, P.L. 158, which was amended by the Act of May 6, 1925, P.L. 546) were repealed and reenacted in amplified form by the Acts of 1931. See 53 P.S. Pa. §§ 523 et seq. and 525 et seq. The gist of all of these acts is the requirement of a bond from all persons or corporations, contracting with a municipality, for the benefit of subcontractors and materialmen who are authorized to sue on such bonds in the name of the city. The ordinance of 1932 (Ordinances of the City of Philadelphia and Opinions of the City Solicitor, 1932, p. 109) merely fulfills the mandate of the statute which reads in part that "It shall be the duty of every municipality to require any person, * * * *". Thus, the language of Justice Kephart is applicable to the facts of the case at bar.

[6] Paragraph 32.
[7] Paragraph 33.

event the right of National Surety to compel the City to look to Union Indemnity's escrow fund for the payment of any sum due the City by reason of the default of Municipal under the contracts executed from 1927 to 1931 has nothing whatsoever to do with the claim of Warner Company against National Surety.

In conclusion we should state that the fact that Warner Company amended its original complaint to seek recovery from National Surety or from the City in the alternative is without relevance insofar as the questions presented to us for determination are concerned. Warner Company, since it is a materialman, has and can have no claim against the City, but must look to National Surety.

The third-party complaint properly was dismissed pursuant to the provisions of Rule 12(b) (6) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for failure to state a claim upon which relief could be granted.

Accordingly, judgment of the court below is affirmed.