# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia        :
:
v.          :
:
Patricia Righter        :
:
City of Philadelphia        :
:
v.          :
:
Righter Parking, Inc. a/k/a    :
Righter Parking Company and :
Robert R. Righter and Anthony :
L. D'Angelo          :
:  No. 2737 C.D. 2015
Appeal of: Anthony L. D'Angelo  :  Argued: October 19, 2017


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION BY
JUDGE COVEY               FILED: November 30, 2017


        Anthony L. D'Angelo (D'Angelo) appeals from the Philadelphia County Common Pleas Court's (trial court) July 17, 2015 amended order finding D'Angelo liable to the City of Philadelphia (City) and finding in favor of Robert Righter (Righter) and Righter Parking, Inc. a/k/a Righter Parking Company (Righter Parking) on D'Angelo's cross-claim.[1]  D'Angelo presents four issues for this Court's review: (1) whether the trial court erred in determining that D'Angelo was personally liable for Righter Parking's parking taxes since he was not the operator; (2) whether the trial court erred by applying the common law doctrine of *trustee ex maleficio* to the City Parking Tax Ordinance (Ordinance);[2] (3) whether the trial court erred or abused

---

[1] The original order did not address the cross-claim.

[2] Chapter 19-1200 of the Philadelphia Code, Phila. Code §§19-1201 - 19-1206.

its discretion in determining that D'Angelo was liable under the doctrine of *trustee ex maleficio* without sufficient evidence supporting the elements required under the doctrine; and (4) whether the trial court erred or abused its discretion in determining that D'Angelo was liable under the doctrine of *trustee ex maleficio* because the City failed to: comply with the Local Taxpayers Bill of Rights (Taxpayers Bill of Rights);[3] notify D'Angelo of his right to challenge any alleged liability for Righter Parking's parking taxes; and provide D'Angelo procedural due process.[4]

## Background

In 2000, Righter Parking was incorporated. At that time, Righter was President and Treasurer, and D'Angelo was Vice-President and Secretary. D'Angelo purchased the parking lot business with the intention that Righter would operate the parking lots. Over time, the business relationship between D'Angelo and Righter deteriorated. Eventually, D'Angelo was not involved in the business. In 2009, the City's Department of Revenue (Department) audited Righter Parking and assessed parking taxes from 2000 to 2008. On October 30, 2009, the City mailed an audit bill to the address on file for Righter Parking.

The Ordinance authorizes the imposition of a tax upon every person parking or storing a motor vehicle in or on any parking facility in the City, which shall be collected by the operator from the person parking or storing the vehicle, and shall be paid to the City. *See* Phila. Code §19-1202(b). At the time of the trial herein, the parties stipulated that, pursuant to the tax bill, the amount of parking taxes owed included $191,370.74 in principal, $211,636.75 in interest, and $311,813.64 in penalty.

---

[3] 53 Pa.C.S. §§ 8421-8438.

[4] D'Angelo presented a fifth issue related to the cross-claim; however, by April 17, 2017 order, this Court granted D'Angelo's discontinuance of the appeal as to Righter and Righter Parking.

2

**Facts**

On February 14, 2014, the City filed a complaint with the trial court against Righter Parking, Righter and D'Angelo claiming $576,506.96 in unpaid parking taxes and penalties. D'Angelo filed a cross-claim against Righter Parking and Righter. On January 3, 2014, the City filed a Motion in Limine (Motion in Limine) to preclude all evidence relative to the amount of tax liability owed by Righter Parking, Righter and D'Angelo due to their failure to exhaust administrative remedies. On January 8, 2014, the trial court granted the City's Motion in Limine. Prior to trial, Righter Parking and Righter settled with the City.

The trial court held a non-jury trial on March 2 and 3, 2015, and issued orders on April 1 and May 5, 2015 allowing the parties to file briefs. On July 17, 2015, the trial court issued its order finding for the City and ruling that D'Angelo was liable to the City for $557,561.98, less the amount of the City's settlement with Righter Parking and Righter.[5] On July 27, 2015, D'Angelo filed a Motion for Post-Trial Relief (Post-Trial Motion). On November 24, 2015, the trial court denied D'Angelo's Post-Trial Motion. On December 23, 2015, D'Angelo appealed to this Court.[6] The trial court issued an order directing D'Angelo to file a Pennsylvania Rule of Appellate Procedure 1925(b) Statement of Errors Complained of on Appeal (Rule 1925(b) Statement). D'Angelo filed his Rule 1925(b) Statement on January 13, 2016. On June 29, 2017, the trial court filed its opinion.

---

[5] The settlement amount is not disclosed in the record. The trial court's order expressly stated that D'Angelo was not an operator under the Ordinance, and that D'Angelo was a *trustee ex maleficio* from 2000 to 2006. The trial court's order further stated that Righter was a *trustee ex maleficio*, and was jointly and severally liable.

[6] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Deep Meadows Civic Ass'n v. Trusello,* 140 A.3d 60, 64 n.4 (Pa. Cmwlth. 2016) (quoting *Swift v. Dep't of Transp.,* 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007)).

## Discussion

Initially, Section 19-1201 of the Philadelphia Code provides:

In this Chapter the following definitions apply:

. . . .

(2) *Parking Facility*. Any outdoor or indoor area or space where more than three (3) motor vehicles may be parked, or stored for a charge, fee or other consideration excluding as of July 1, 1985, all or any portion of the common elements or limited common elements of a condominium which are used for parking spaces where such parking spaces are used exclusively by one (1) or more unit owners or tenants of unit owners who are residents of that condominium.

(3) *Operator*. **Any person conducting or operating a parking facility,** and any Valet Parking Operator as defined in Section 9-601 of th[e Philadelphia] Code.

(4) *Transaction*. The act of parking or storing a motor vehicle in or on a parking facility in the City, for a financial consideration, or its equivalent, under an express or implied contract, excluding, however, the parking of any motor vehicle in or on a parking facility in the City or any valet parking as defined in Section 9-601 of th[e Philadelphia] Code, for a financial consideration, or its equivalent, under an express or implied contract.

Phila. Code §19-1201 (bold emphasis added). Section 19-1202 of the Philadelphia Code mandates:

(1) (a) There is hereby imposed upon every person parking or storing a motor vehicle in or on any parking facility in the City . . . on July 1, 1987, or thereafter, a tax of fifteen percent (15%) of the amount charged for the transaction, **which tax shall be collected by the operator** from the person parking or storing the vehicle, **and shall be paid over to the City** as provided herein.

(b) There is hereby imposed upon every person parking or storing a motor vehicle in or on any parking facility in

4

the City, and upon every person who leaves a motor vehicle with a valet for parking in the City, between July 1, 1989 and June 30, 2008, inclusive, a tax of fifteen percent (15%) of the amount charged for the transaction, and on July 1, 2008 and thereafter, a tax of twenty percent (20%) of the amount charged for the transaction, **which tax shall be collected by the operator from the person parking or storing the vehicle, and shall be paid over to the City as provided herein**. . . .

. . . .

(2)    **All taxes collected by any operator in accordance with this Chapter shall constitute a trust fund for the City** and such trust shall be **enforceable against such person and any person receiving any part of such fund** without consideration, or knowing that the operator is committing a breach of trust . . . .

(3)    **Any operator required under this Chapter to collect tax from another person, who shall fail to collect the tax, shall be liable for the tax upon the full amount charged**.

Phila. Code §19-1202 (emphasis added).  Section 19-1203 of the Philadelphia Code establishes that: "Every person required to collect the tax imposed by this Chapter shall at such intervals as the [Revenue] Commissioner shall establish by regulations, make and file with the Department a return on a form furnished by or obtainable from the Department . . . ."  Phila. Code §19-1203.  Section 19-1204 of the Philadelphia Code requires every operator to "keep accurate books and records to which the Department shall have full access at all times."  Phila. Code §19-1204.

D'Angelo first argues that the trial court erred by concluding he was personally liable for Righter Parking's parking tax because the trial court found that "D'Angelo is not an 'operator' as defined in Section 19-1201(3) of the Philadelphia Code."  Trial Ct. July 17, 2015 order.  The City rejoins that the trial court determined D'Angelo liable under the common law doctrine of *trustee ex maleficio,* which the Ordinance did not expressly repeal or abrogate.

5

Under Pennsylvania common law, an individual can be personally responsible for corporate taxes under the doctrine of *trustee ex maleficio*. *City of Phila*[.] *v. Penn Plastering Corp*[.], . . . 253 A.2d 247, 249 ([Pa.] 1969). Responsible officers of a corporation who fail to remit the withheld taxes are all *trustees ex maleficio,* and they can be responsible.

*City of Phila. v. GoInternet Net, Inc.,* 935 A.2d 586, 596 n.16 (Pa. Cmwlth. 2007).

Our Supreme Court has instructed:

Whenever we are called to interpret a statute and determine the legislative intent, the analysis must necessarily begin with the Statutory Construction Act [of 1972 (Statutory Construction Act)], 1 Pa.C.S. §[§] 19[0]1[-1991.] Under [the Statutory Construction] Act an implication alone cannot be interpreted as abrogating existing law. **The legislature must** affirmatively repeal existing law or **specifically preempt accepted common law for prior law to be disregarded**.

*Metro*[.] *Prop*[.] [&] *Liab. Ins. Co. v. Ins*[.] *Comm'r of Pa.,* . . . 580 A.2d 300, 302 ([Pa.] 1990); *see also Rahn v. Hess, . . .* 106 A.2d 461, 464 ([Pa.] 1954) ('**Statutes are never presumed to make any innovation in the rules and principles of the common law** or prior existing law beyond what is expressly declared in their provisions[.]') (citing *Szilagyi et al. v. Bethlehem, . . .* 167 A. 782 ([Pa.] 1933); *Gratz v. Ins*[.] *Co. of N*[.] *Am*[.]*, . . .* 127 A. 620 ([Pa.] 1925)); *Buradus v. Gen*[.] *Cement Prods. Co., . . .* 48 A.2d 883, 886 ([Pa. Super.] 1946) ('**In the absence of express declaration, the law presumes that the act did not intend to make any changes in the common law**, for if the legislature had that design they would have expressed it.'), *aff'd per curiam on basis of opinion of lower court . . .* 52 A.2d 205 ([Pa.] 1947); *accord U*[.] *S*[.] *v. Texas,* 507 U.S. 529, 534 . . . (1993) ('**In order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law**.') (quoting *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 625 . . . (1978)); *Wheaton v. Peters,* 33 U.S. 591, 691 . . . (1834) (Thompson, J., dissenting) ('**If a thing is at common law, a statute**

6

**cannot restrain it, unless it be in negative words**.'); *but cf.* 1 Pa.C.S. § 1928.

*In re Rodriguez,* 900 A.2d 341, 345 (Pa. 2003) (emphasis added).

Here, D'Angelo contends that the common law doctrine of *trustee ex maleficio* cannot apply because the Ordinance specifically "limits" the liability of the parking tax to operators. D'Angelo Br. at 19. However, because the Ordinance did not expressly repeal or abrogate the *trustee ex maleficio* doctrine, the trial court's declaration that D'Angelo was not an operator did not preclude its finding of liability.

D'Angelo further asserts that the trial court erred by holding him liable under the doctrine of *trustee ex maleficio* because the Statutory Construction Act dictates otherwise.

Our Supreme Court has long held:

One who collects taxes as agent for a city and fails to pay the same over to the city has long been held to be a *trustee ex maleficio*. . . . Its officers are all *trustees ex malefi*cio and are responsible together with the corporation where they were responsible for the performance of the duty to collect the taxes and were in control of the corporation's funds and tax accounts.

*Penn Plastering,* 253 A.2d at 249 (italics added).

[T]he factors used to determine officer liability on a theory of *trustee ex maleficio*[ ] include physical presence on the premises, ability to hire or fire employees, reviewing and signing tax returns, signing payroll checks, signing checks for expenses, obtaining loans, consulting the company's books and acting as an administrator or manager.

*GoInternet,* 935 A.2d at 596 n.17.

D'Angelo maintains that because the Ordinance expressly designates the *operator* as the collector of the parking tax, and the trial court found he was not the *operator*, under the Statutory Construction Act, he cannot be held liable. However, the Ordinance's clear language belies this argument. The Ordinance does not

7

mandate that **only** the operator pay the tax to the City but rather directs, in relevant part:

> **All taxes collected** by any operator **in accordance with this Chapter shall constitute a trust fund for the City and** such trust **shall be enforceable against** such person and **any person receiving any part of such fund without consideration**, or knowing that the operator is committing a breach of trust[.]

Phila. Code §19-1202(2) (emphasis added). Thus, while the Ordinance mandates the tax "be collected by the operator," it does not limit liability for payment of the tax solely to the operator. Phila. Code §19-1202(1)(b). Instead, by creating a trust, the Ordinance expands liability for payment of the tax to "any person receiving any part of such fund." Phila. Code §19-1202(2). Notwithstanding, the City expressly asserted during oral argument that once the trial court determined D'Angelo was not an operator under the Ordinance it was no longer proceeding thereunder, but rather under the *trustee ex maleficio* doctrine. Accordingly, the Statutory Construction Act did not preclude the trial court from finding D'Angelo liable for the taxes.

D'Angelo next contends that the trial court erred or abused its discretion in determining that D'Angelo was liable under the *trustee ex maleficio* doctrine because the City did not present evidence that D'Angelo committed malfeasance or wrongdoing. D'Angelo cites *GoInternet* to support his position. The City rejoins that *GoInternet* is distinguishable from the instant case because the *GoInternet* Court determined that the language of the City Wage Tax Ordinance[7] rather than the *trustee ex maleficio* doctrine established the willfulness requirement, and the *trustee ex maleficio* doctrine does not require a finding of willfulness. *See Penn Plastering;*

---

[7] Chapter 19-1500 of the Philadelphia Code, Phila. Code §§19-1501 – 19-1509.

*City of Phila. v. Petherbridge,* 781 A.2d 263 (Pa. Cmwlth. 2001); *City of Phila. v. B. Axe Co.,* 397 A.2d 51 (Pa. Cmwlth. 1979).[8]

In *GoInternet,* unlike the above-cited cases, this Court discussed the language of the City Wage Tax Ordinance. Specifically, it referred to Sections 19-1507(1) and (5) of the Philadelphia Code which states:

> (1) Any person required to collect, truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation who fails to collect such tax, or truthfully account for and pay over such tax, **or willfully attempts in any manner to evade or defeat any such tax or the payment thereof**, shall be liable for the full amount of such tax.
>
> . . . .
>
> (5) This section is modeled upon Section 6672 of the Internal Revenue Code [(IRC),] (26 U.S.C. § 6672), and it is City Council's intent that **this section be construed in the same manner that Section 6672 [of the IRC[9]] has** been construed.

*GoInternet,* 935 A.2d at 592 (quoting Phila. Code §19-1507(1), (5)) (italic emphasis omitted; bold emphasis added). The *GoInternet* Court, **based on the City Wage Tax Ordinance's specific language**, rejected the City's argument that willfulness was not an element of its case. Accordingly, the trial court here did not err or abuse its discretion in determining that D'Angelo was liable under the *trustee ex maleficio* doctrine without any evidence that D'Angelo committed malfeasance or wrongdoing.

D'Angelo also maintains that no Pennsylvania cases have applied the *trustee ex maleficio* doctrine to the Ordinance. The City responds that the parking tax and the wage tax are similar, and the doctrine has been applied to the City Wage Tax

---

[8] These cases will be discussed more fully below.

[9] The City did not and could not direct the Court to a single case that construed Section 6672 of the IRC not to require willfulness on the part of the responsible person held liable for his employer's failure to pay a tax.

Ordinance. *See Penn Plastering; Petherbridge*; *B. Axe Co.* Thus, the City asserts that the doctrine should be applied herein.

> The City Wage Tax Ordinance provides, in relevant part:
>
> Liability of Persons To Collect, Account For and Pay Over Wage Taxes.
>
> (1) Any person required to collect, truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation who fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall be liable for the full amount of such tax.
>
> (2) For purposes of subsection 19–1507(1) an individual or entity that exercises significant control over the financial affairs of an employer, including without limitation the disbursements of funds or determining the priority of payments to creditors, is deemed to be a person required to collect, truthfully account for, and pay over any tax imposed by this Chapter on salaries, wages, commissions and other compensation.
>
> (3) **For purposes of this section, 'person' includes a shareholder, director, trustee, officer or employee of a corporation**, or a partner or employee of a partnership, or the sole proprietor of a sole proprietorship, or a third party who makes either direct payment of wages to the employees of another or advances funds to pay the wages of the employees of another.
>
> (4) More than one person may be liable under subsection 19–1507(1) with respect to the same employer, with each such person being jointly and severally liable for the full amount of the tax.

Phila. Code §19-1507 (emphasis added). D'Angelo asserts that the City Wage Tax Ordinance is distinguishable because it expressly defines persons upon whom personal liability may be imposed, i.e., a shareholder, director, trustee, officer or employee of a corporation, and the Ordinance does not. Therefore, the cases

10

applying the *trustee ex maleficio* doctrine to the City Wage Tax Ordinance are also distinguishable.

In *Penn Plastering*, this Court reversed a trial court order sustaining a Pennsylvania corporation's president/director's preliminary objections to the City's complaint regarding the corporation's failure to pay city wage taxes. The *Penn Plastering* Court determined that if the allegations (i.e., the president/director was responsible for collecting the taxes, was in control of the corporation's funds and tax accounts, and permitted, directed and participated in the use and conversion of the funds) were substantiated at trial, the president/director would be liable for the taxes as a *trustee ex maleficio*, and therefore the preliminary objections must be dismissed.

Similarly, in *Petherbridge*, notwithstanding that the City Wage Tax Ordinance identified persons liable for the tax, this Court ruled that a corporation's president was personally liable for unpaid corporate wage withholding taxes on the basis that he was a *trustee ex maleficio* with respect to the unpaid wage withholding taxes because the 1989 and 1990 wage tax documents in evidence were signed by him, and he admitted that he probably signed the company's tax returns from 1991 to 1993. In its decision, the Court did not reference the Section 19-1507 language of the Philadelphia Code specifying who may be liable to pay the tax. Rather, it examined whether the president was a *trustee ex maleficio*.

Finally, the *B. Axe Co.* Court found a company's chief operating officer personally liable for withheld city wage taxes under the doctrine of *trustee ex maleficio*. The dispositive factors were: the company's chief operating officer was physically present on the premises of the company at all relevant times and exercised his authority by hiring and firing employees; he reviewed and signed all tax returns (including the returns for the unpaid wage taxes at issue); he signed payroll checks, executed contracts, negotiated with contractors and suppliers; he also signed checks for the payment of expenses, obtained loans, consulted the company's books and

11

records and otherwise acted as the company's manager and administrator. Importantly, he signed checks for payment of the company's expenses with knowledge that wage taxes withheld from the company's employees had not been paid to the City. Based on the foregoing, we hold that the trial court here properly applied the *trustee ex maleficio* doctrine to the Ordinance in this case.

D'Angelo further contends that the trial court's conclusion that he is liable under the *trustee ex maleficio* doctrine is not supported by substantial evidence. The trial court determined that D'Angelo and Righter were jointly and severally liable under the *trustee ex maleficio* doctrine for Righter Parking's unpaid parking taxes. In so holding, the trial court limited D'Angelo's liability to tax years 2000 through and including 2006. In making its determination, the trial court found that D'Angelo was Righter Parking's Vice-President and Secretary, *see* Notes of Testimony March 2, 2015 (N.T.) Ex. P-8 ("Righter Parking First Meeting of Directors"); D'Angelo signed four business tax returns between 2000 and 2003 (*see* N.T. Ex. P-5 (2000-2003 City "Business Privilege Tax New Start Return[s]")); and the business privilege tax checks in 2004, 2005 and 2006 (*see* N.T. Ex. P-4 (Righter Parking Check numbers 261, 1038, 1170 signed by D'Angelo)). Further, the trial court found that Righter Parking's primary mailing address for both the Department and the Internal Revenue Service was D'Angelo's home address, and D'Angelo signed three parking lot leases, and two lease amendments on behalf of Righter Parking between 2000 and 2003.

However, Righter was Righter Parking's President and Treasurer, *see* N.T. at 202-203, and Righter signed the business tax returns from 2004 to 2008, *see* N.T. at 191-194. *See Penn Plastering*; *Petherbridge*; *B. Axe Co.* (wherein the officer found responsible for the collection of taxes, and control and disbursement of funds was either the corporate president or chief executive officer). Moreover, Righter admitted that he was "the day-to-day manager of the operation of Righter Parking

12

[][,]" N.T. at 198, and that "D'Angelo never ran or operated a parking lot for Righter Parking[][.]" N.T. at 200. In addition, Righter confirmed that "D'Angelo did not prepare tax returns for the company[,]" N.T at 203, and that it was Righter's "responsibility as operator of the lots to submit the tax coupons to the City[.]" *Id.* In fact, Righter testified that he did not know Righter Parking had not paid its parking taxes until 2004 or 2006; however, Righter signed the 2003 Settlement Agreement with the City for Righter Parking's parking taxes for tax years 2000 to 2003, and signed the check made payable to the City for payment thereof. *See* N.T. at 196-197.

The trial court also stated that D'Angelo testified that he and Righter jointly made the decision to hire the accountant for the business. However, the record reveals that D'Angelo merely confirmed that the accountant "was hired with [the] mutual consent [of] [D'Angelo] and [] Righter," and the two did not collaborate on hiring "anyone else." N.T. at 145. Although Righter Parking had employees, there was no record evidence that D'Angelo hired or fired them or even knew the employees as he was not physically present on Righter Parking's premises. Further, the trial court found that D'Angelo testified he had access to cash from the parking lots and at times made bank deposits on behalf of the corporation, *see* N.T. at 58, but D'Angelo attested that it was only "at Righter's request[,]" and the Daily Business Reports created at the end of each day were "[n]ever in [D'Angelo's] possession." N.T. at 59.

Accordingly, the record evidence does not support the trial court's conclusion that D'Angelo had the responsibility or control over the collection of Righter Parking's taxes and disbursement of corporate funds that would make him liable for Righter Parking's parking taxes. Signing four tax returns and signing three checks, one check per year, does not constitute "responsib[ility] for the performance of the duty to collect the taxes and . . . control of the corporation's funds and tax accounts." *Penn Plastering,* 253 A.2d at 249. Specifically, although Righter testified

13

that it was D'Angelo's responsibility to pay the bills, including the rent, Righter was expressly referring to the "early discussions during the creation of the company[.]" N.T. at 170. Further, even though Righter declared that D'Angelo was **solely responsible for the payment of bills and taxes** from 2004 to 2008, s*ee* N.T. at 180-181, Righter attested that **Righter** signed the business tax returns from 2004 to 2008. *See* N.T. at 194.

Consequently, we hold that D'Angelo's actions do not satisfy the factors used to determine officer liability under *trustee ex maleficio*, namely,

> physical presence on the premises, [it is undisputed that D'Angelo was not physically present at the lots,] ability to hire or fire employees, [D'Angelo consented to retaining an outside accountant and there is no evidence that D'Angelo hired or fired the employees who worked at the parking lots,] reviewing and signing tax returns, [D'Angelo signed only four returns,] signing payroll checks, [there was no evidence presented that D'Angelo ever signed a payroll check,] signing checks for expenses, obtaining loans, consulting the company's books and acting as an administrator or manager[, Righter verified that he was the day-to-day manager of the operation of Righter Parking and D'Angelo testified that Righter, not he, possessed the Daily Business Reports created at the end of each day.]

*GoInternet,* 935 A.2d at 596 n.16. Because the record evidence does not support the trial court's conclusion that D'Angelo is a *trustee ex maleficio*, the trial court erred by finding D'Angelo liable for Righter Parking's parking taxes.

Finally, D'Angelo argues that the trial court erred or abused its discretion in determining that D'Angelo was liable under the *trustee ex maleficio* doctrine because the City failed to: comply with the Taxpayer Bill of Rights;[10] notify

---

[10] Section 8423 of the Taxpayers Bill of Rights provides:

> **(a) Contents.--**The local taxing authority shall prepare a statement which sets forth the following in simple and nontechnical terms:

14

D'Angelo of his right to challenge any alleged liability for Righter Parking's taxes; and provide D'Angelo procedural due process.[11]  In response, the City concedes that the trial court erred in granting the City's pre-trial Motion in Limine.[12]  This Court

(1) The rights of a taxpayer and the obligation of the local taxing authority during an audit or an administrative review of the taxpayer's books or records.

(2) The administrative and judicial procedures by which a taxpayer may appeal or seek review of any adverse decision of the local taxing authority.

(3) The procedure for filing and processing refund claims and taxpayer complaints.

(4) The enforcement procedures.

**(b) Distribution.--**The local taxing authority shall notify any taxpayer contacted regarding the assessment, audit, determination, review or collection of an eligible tax of the availability of the statement under subsection (a).  The local taxing authority shall make copies of the statement available to taxpayers upon request at no charge to the taxpayer, including mailing costs.  The notification shall be stated as follows:

You are entitled to receive a written explanation of your rights with regard to the audit, appeal, enforcement, refund and collection of local taxes by calling (name of local taxing authority) at (telephone number) during the hours of (hours of operation).

53 Pa.C.S. § 8423.

[11] D'Angelo maintains that procedural due process requires notice and an opportunity to contest and challenge the alleged individual tax liability sought to be imposed upon D'Angelo personally.

[12] The Motion in Limine was entitled: "[THE CITY'S] MOTION IN LIMINE TO PRECLUDE [RIGHTER, RIGHTER PARKING AND D'ANGELO] FROM OFFERING ANY WITNESS TESTIMONY OR ANY DOCUMENTATARY EXHIBITS AT TRIAL."  R.R. at 606a.  Therein, the City "request[ed] th[e trial c]ourt [to] preclude [Righter, Righter Parking, and D'Angelo] from offering any testimony by witnesses or any documentary exhibits at trial to challenge the audit and self-assessed liabilities, as [Righter, Righter Parking, and D'Angelo] failed to exhaust their administrative remedies."  *Id.*  On January 8, 2014, the trial court granted the Motion in Limine.  *See* R.R. at 670a.

agrees with the City's concession that the trial court erred in granting the City's Motion in Limine. However, because we determined that D'Angelo is not liable for Righter Parking's parking taxes, this issue is moot.

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Philadelphia | : |
| | : |
| v. | : |
| | : |
| Patricia Righter | : |
| | : |
| City of Philadelphia | : |
| | : |
| v. | : |
| | : |
| Righter Parking, Inc. a/k/a | : |
| Righter Parking Company and | : |
| Robert R. Righter and Anthony | : |
| L. D'Angelo | : |
| | :    No. 2737 C.D. 2015 |
| Appeal of: Anthony L. D'Angelo | : |

# O R D E R

AND NOW, this 30th day of November, 2017, the Philadelphia County Common Pleas Court's July 17, 2015 amended order finding Anthony L. D'Angelo (D'Angelo) liable to the City of Philadelphia and finding in favor of Robert Righter and Righter Parking, Inc. a/k/a Righter Parking Company on D'Angelo's cross-claim is reversed.

 

 

                                 _____

                                 ANNE E. COVEY, Judge