Joseph S. Biello, Administrator of the Estate of Joseph D. Biello, deceased, *v.* Pennsylvania Liquor Control Board, William Z. Scott, Edwin Winner, and George R. Bortz, individually and as members of the Liquor Control Board; Frank E. Rutter, individually and as Director of State Stores.

Argued November 16, 1970, before President Judge BOWMAN, and Judges KRAMER, WILKINSON, JR., MANDERINO, MENCER, and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*William J. Brickley,* with him *Yale B. Bernstein, Brickley, Torpey & Bernstein, Thomas D. Nabors, Jr.,* and *Nabors & Ressler,* for plaintiff.

*J. Leonard Langan,* Assistant Attorney General, with him *Thomas J. Shannon,* Assistant Attorney General, and *Fred Speaker,* Attorney General, for defendants.

OPINION BY JUDGE WILKINSON, January 29, 1971:

The complaint to which preliminary objections have been filed alleges a cause of action for wrongful death and survival. Defendants are Pennsylvania State Liquor Control Board, William Z. Scott, Edwin Winner, and George R. Bortz, individually and as members of the Pennsylvania Liquor Control Board, and Frank E. Rutter, individually and as director of state liquor stores.

The issues presented by briefs and argued before this Court involve two questions. First, may an action in trespass for damages be brought against the Pennsylvania Liquor Control Board if a sale is made in a state store to a minor in violation of the Act of April 12, 1951, P. L. 90, Art. IV, §493, as amended? Second, are the members of the Board and the director of state stores civilly liable as individuals when there is no allegation that the illegal sale was made by them personally or at their personal direction? Both questions must be answered by this Court in the negative.

The attorneys for the plaintiff in their brief and in oral argument recognized the well established, albeit much criticised, principle that governmental bodies are immune from suit in Pennsylvania. Indeed, this particular suit against the Commonwealth is barred by Article I, Section 11 of the Pennsylvania Constitution which provides, inter alia, "suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." *See Meagher v. Commonwealth,* 439 Pa. 532, 266 A. 2d 684 (1970). *See also Conrad, et ux. v. Commonwealth,* 93 Dauph. 65 (1970). Plaintiff attempted to overcome this barrier by asserting that in making it a criminal act for the Board or its agents to sell liquor to a minor, the Legislature has waived the Commonwealth's immunity and consented to be sued. We do not agree with this proposition. A constitutional duty to designate the manner of bringing suit, the court which is to have jurisdiction, and the nature of the case to be heard, cannot be fulfilled by drawing any implications from the fact that the Legislature made liquor sales to minors a crime. Indeed, in the Act of July 31, 1970, No. 223, commonly known as *Appellate Court Jurisdiction Act of 1970,* the Legislature stated specifically that by conferring jurisdiction

on this Court over cases in which the Commonwealth is a party, it did not, by implication, waive the Commonwealth's immunity from suit.

Plaintiff attempts to apply the doctrine of governmental liability when acting in a proprietary capacity, asserting that the operation of a state retail store was a proprietary function. Suffice it to say that neither the Constitution nor the cases apply such a doctrine in Pennsylvania when dealing with suits against the Commonwealth.

The second question argued to this Court is whether there is individual liability on the Board members or the director of state stores. It is well established in Pennsylvania that one who holds a public office is not personally liable for the acts of negligence of his subordinates unless he directed the negligent act to be done. *Commonwealth to the use of Orris v. Roberts et al.*, 392 Pa. 572, 575-6, 141 A. 2d 393 (1958).

Accordingly we make the following

## ORDER

AND NOW, January 29, 1971, the preliminary objections in the nature of a motion to dismiss the complaint for lack of jurisdiction are sustained.

---

DISSENTING OPINION BY JUDGE KRAMER:

This matter is before this Court within the purview of the original jurisdiction of the Commonwealth Court. The specific matters upon which we have been asked to rule are the *Preliminary Objections* filed by the Commonwealth of Pennsylvania (Commonwealth) to a *Complaint in Trespass* based upon a cause of action for wrongful death.* At this stage in the pro-

---

* In general, the alleged facts are that on January 14, 1969, the 16-year-old son of the plaintiff was sold a fifth of Scotch whiskey in a Pennsylvania State liquor store. The son drank the whiskey, and while intoxicated, fell from a height and was killed.

ceedings, we are not called upon to rule whether or not defendants are liable for any alleged negligence; but, rather, we are required to rule on whether or not the preliminary objections raise a legal roadblock to proceeding further with the filing of an answer or other pleadings and eventually a trial.

Under the preliminary objections filed in this case, we need only determine whether or not under the State Constitution the Pennsylvania Liquor Control Board may be held liable for the alleged negligence in the event that a trial would be held. For some unexplained reason the preliminary objections are restricted to the Commonwealth and the Board; and they fail to refer to the other named defendants who have been sued also as individuals. The Commonwealth argues that neither it nor its instrumentality may be sued because of its sovereign immunity.

Sovereign immunity* is a doctrine implanted in the Pennsylvania Constitution, which says that the State Government can be sued if it gives that right. The specific language in our Pennsylvania Constitution is found in Article I, Section 11: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in courts and in such cases as the Legislature may by law direct." It is important to note that our Constitution does not specifically prohibit suits against the Commonwealth, but rather limits the suits against it as the Legislature may direct.

---

\* Sovereign immunity stems from the often quoted "The King can do no wrong" in spite of the fact that as far back as the Magna Carta in 1215 A. D., and especially in our Declaration of Independence, 1776 A. D., there is historic proof to the contrary.

At this stage in the development of the law of this State, there can be no doubt that without legislative permission the *Commonwealth* cannot be sued for tort liability because of the doctrine of sovereign immunity. *Meagher v. Commonwealth*, 439 Pa. 532, 266 A. 2d 684 (1970).

It is also without question that this doctrine of sovereign immunity likewise applies to all instrumentalities, agencies, counties and municipalities of the Commonwealth while operating in what are known as governmental functions. This is sometimes called governmental immunity. *Russell v. Men of Devon*, 2 T.R. 667, 100 Eng. Rep. 359 (1788), *Shields v. Pittsburgh School District*, 408 Pa. 388, 184 A. 2d 240 (1962), *Supler v. North Franklin Township School District*, 407 Pa. 657, 182 A. 2d 535 (1962), *Dillon v. York City School District*, 422 Pa. 103, 220 A. 2d 896 (1966).

However, a chink has been put into the armor of this absolute and ancient sovereign defense where the operation being performed by an instrumentality of the Commonwealth was found, by a court, to be a proprietary function. *Morris v. Mount Lebanon Township School District*, 393 Pa. 693, 144 A. 2d 737 (1958), *Bell v. Pittsburgh*, 297 Pa. 185, 146 A. 567 (1929).

A proprietary function has been described as an instrumentality of the sovereign operating in an area (1) not required by statute, (2) which may be carried on by private enterprise, or (3) where it may use such operation to raise revenues. (See *Morris v. Mount Lebanon Township School District*, supra.)

Although morally bent to a belief that all injuries to all citizens should be redressed in a court of law, as this writer views the Constitutional provision and decisions on sovereign immunity, it should be applied to all governmental operations (state and local) which are purely governmental, e.g., police and fire protec-

tion, roads, education, courts, etc. Where, however, the government (state or local) enters into an operation or function which is deemed by a court or by legislation to be a proprietary business, not purely governmental in nature, then the sovereign or governmental immunity doctrine should not apply and liability for negligence should attach. I would interpret constitutional immunity as not being applicable to the latter proprietary functions, whether by the State or by one of its instrumentalities, and I would include State Liquor Stores in this category.

The first thing we notice is that the instant suit is not against the Commonwealth of Pennsylvania as the sovereign but rather against one of its instrumentalities, the Liquor Control Board. Therefore, we should look to determine whether or not the Board operates in a governmental function or in a proprietary function. In addition, we should determine whether or not there is any statutory provision concerning a lawsuit against the Board.

There is no doubt that *if* the functions of the Board are purely governmental in nature, then the immunity doctrine should apply under the present status of the law, and in such a case the preliminary objections should be sustained. I do not believe this to be the case under these facts.

The particular operation of the Board in the instant case is through another agency or instrumentality of the Board, which is subservient to it, and which is specifically authorized by the Legislature (47 P.S. 3-301). That section states, "The Board shall establish, operate and maintain at such places throughout the Commonwealth as it shall deem essential and advisable, stores to be known as 'Pennsylvania Liquor Stores,' for the sale of liquor and alcohol in accordance with the provisions of and the regulations made under this Act . . ."

It is also interesting to discover that the Legislature has not given the Board the absolute sovereign power to establish state liquor stores the Board deems advisable, but, rather, provides a procedure whereby fifteen or more taxpayers residing within a quarter of a mile of any such proposed location, or a city solicitor of a city of the first class, may file protests (47 P.S. 301). In such event, the court shall afford an opportunity for all parties interested to present evidence, and *the court* shall determine whether or not the Board may establish the location for a store. The statute even provides that the court may direct the Board to abandon a proposed location; and so we see that in carrying out its duties, the Board, unlike a sovereign, does not have the absolute authority to make such a determination.

Pennsylvania liquor stores came into being in 1933.* They replaced privately owned and operated liquor stores in the Commonwealth.** In Section 491 of the Code (47 P.S. 4-491) the Legislature prohibits anyone from purchasing liquor from anyone other than a state liquor store (with certain exceptions such as sacramental wines). If there ever was a field where a government could be said to be operating in a proprietary function, it is in the retail sales operation of liquor

---

* There were no State liquor stores at the time the constitutional provision in question became effective, and therefore it is stretching the imagination to say that this 1874 provision was intended to apply to a State liquor sales business in 1933 or in 1969.

** It is worthy of our attention that the federal courts have ruled that where a state has taken over the private sales of liquor, the federal tax liability remains the same for a state as it does for a private citizen in the liquor selling business, because the Federal Government looks upon such a state operation as a proprietary function. *South Carolina v. U.S.*, 199 U.S. 437, 50 Lawyer's Edition 261 (1905), *Ohio v. Helvering*, 292 U.S. 360, 78 Lawyer's Edition 1307 (1934).

stores. Prior to 1933, if someone was injured by a liquor store operator, he could recover his damages for the tort committed. After 1933 the Commonwealth would argue that by virtue of the State Legislature directing the Board to enter into the field of private business in the sale of liquor, persons injured in such a store are left without any remedy except the possibility of a lawsuit against some impecunious store clerk individually.

There is authority for an argument that the control of liquor traffic is a governmental function within the police powers, such as *Merchants Warehouse Company v. Gelder,* 349 Pa. 1, 36 A. 2d 444 (1944) ; but these cases had to do with operations (warehousing contract) other than the sale of liquor in a retail store. There is no case directly in point. Furthermore, if the traffic of intoxicating beverages is the purpose of the state liquor stores, why is it that the retail sale of beer (which also causes intoxication) is not also conducted in state beer stores owned and operated by the Commonwealth?

It is incongruous that the Pennsylvania Constitution should guarantee to every citizen the right to sue for his injuries (Article I, Section 11, supra) and then to hold that if the State takes over and operates a private business a citizen cannot sue for injuries directly caused by that business. I wonder what the majority would hold if all of a sudden the Commonwealth would take over and operate all retail grocery stores, or any other private business for that matter. Would they continue to say that the State can operate all proprietary functions and injure citizens with impunity?

In the case of *Morris v. Mount Lebanon Township School District* (supra), a public school swimming pool was used during summer vacation for paid recreation facilities by all citizens. A child was drowned,

and in a tort lawsuit the Pennsylvania Supreme Court dismissed preliminary objections based upon sovereign immunity, saying that such an operation was a proprietary function. This decision is *very* important here for the reason that public education is a mandated state operation under the Pennsylvania Constitution (Article III, Section 14*), and therefore school districts are a constitutional instrumentality of the State. If school districts do not *always* operate in governmental functions, then certainly it is conceivable that the Liquor Control Board, which is not mentioned specifically in the Constitution, does not always operate in a governmental function.

The writer takes judicial notice of the fact, as shown in published records of the Commonwealth, that profits are made by the state liquor stores of Pennsylvania.

The writer must confess that he has been influenced by the dissenting opinions of Justices ROBERTS and POMEROY in the case of *Laughner v. County of Allegheny*, 436 Pa. 572, 261 A. 2d 607 (1970). The many cases and aithorities cited by these two Justices and the sound reasoning there lend support to the position herein that the operation of liquor stores is proprietary in nature, and liability for tort should attach.

I find further support in the language of the statute itself, for it says in Section 493(1) of the Liquor Code (47 P.S. 4-493(1)), "It shall be unlawful (1) for . . . the Board, or any employee, servant or agent of . . . the Board . . . to sell . . . any liquor . . . to any minor . . . ." With only one other exception (47 P.S. 493(3)), in all of the extensive prohibitions set forth in Sections 491, 492, 493, the Board is not specifically

---

* Section 14. The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth.

mentioned. What possible reason could the Legislature have had in specifically (in Section 493(1)) making it unlawful for the Board to sell liquor to minors, if it wasn't indicating its legislative intent that this was such an important matter of public policy that it (The Board) could be held liable for such an unlawful act? How can it be said that this provision is intended to be solely related to criminal law? How does the Commonwealth fine or put itself (its board) in jail for a violation? If the sovereign can do no wrong, how can it violate Section 493(1) of the Code, even criminally? Why mention the Board at all, if more than a crime wasn't intended? By the manner in which this prohibition is set forth in the Code, I can find authorization to sue the Board if as a result of doing such an unlawful act a minor is intoxicated and killed.

Therefore I would overrule the preliminary objections and direct the Liquor Control Board to file an answer.

Judge MANDERINO joins in this dissenting opinion.