## Armour Rentals, Inc., et al. *v.* General State Authority.

518

Argued November 4, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*Kenneth M. Cushman,* with him *Robert F. Cushman, J. Anthony Messina, E. Parry Warner* and *Pepper, Hamilton & Scheetz,* for plaintiffs.

*Richard D. Holahan,* Assistant General Counsel, with him *Michael A. Madar,* General Counsel, *Jack Mulhall,* Assistant Attorney General, and *Robert A. Miller,* Deputy Attorney General, *Gerald Gornish,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for defendants.

OPINION BY JUDGE ROGERS, February 28, 1972:

This is a sequel to the proceedings reported as *Armour Rentals, Inc., et al. v. General State Authority, et al.,* 2 Pa. Commonwealth Ct. 301, 278 A. 2d 177 (1971). There we sustained a motion to strike plaintiffs' complaints, one in trespass and the other in assumpsit against the General State Authority (hereinafter called GSA), the Insurance Department and the Insurance Commissioner. The plaintiffs have filed one amended complaint against the same defendants but, upon stipulation and with leave of court, the actions

against the Insurance Department and the Insurance Commissioner have been discontinued.

We have now before us preliminary objections of the GSA to plaintiffs' amended complaint. For better understanding we will briefly recite the averments of the complaint although they are essentially the same as those recited in our earlier opinion at 2 Pa. Commonwealth Ct. 301. The plaintiffs are unpaid subcontractors of Cubic Construction Company (Cubic), general contractor for the construction of a field house and classroom building at West Chester State College for the GSA; Cubic as principal and Prudence Mutual Casualty Company (Prudence) as surety delivered to the GSA as obligee a labor and materialmen's bond in the amount of $2,821,000; the delivery of the bond was by state law a condition to the award of the general contract to Cubic; state law further provided that a surety's authority to underwrite bonds was limited to 10 percent of its capital and surplus; Prudence's limitation at the time GSA awarded the contract to Cubic was not in excess of $225,764; thereafter Prudence's limitation declined until it was barred from writing any surety bonds with Commonwealth; Cubic is bankrupt and cannot pay plaintiffs for their work; and Prudence is in liquidation and its contract of surety is worthless.

It is important to here make particular mention of the conceded fact that GSA has paid Cubic in full under its contract and that any recovery by the plaintiffs will constitute pro tanto double payment by the agency.

Count I of the complaint is in trespass and characterizes as negligent the failure of GSA to require good security of Cubic, its acceptance of the insufficient bond without reinsurance and its failure to require Prudence to obtain reinsurance after becoming aware of that company's poor financial condition.

Count II, also in trespass, claims negligence on the part of GSA in making payments to Cubic at times when it knew or had reason to know that subcontractors were not being paid and that the bond did not provide adequate protection for subcontractors.

Count III is stated to be in assumpsit. It refers to a general condition of the contract between GSA and Cubic requiring the latter to furnish additional security to protect the GSA and subcontractors in the event of the surety's becoming unsatisfactory and avers that this conferred third party beneficiary rights upon subcontractors. It further claims that the whole of the circumstances here present imposed an obligation on GSA, presumably contractual in nature, to require Cubic to furnish additional security.

Count III, also stated to be in assumpsit, simply concludes that by reason of "the aforesaid breaches of the Authority" it is liable to plaintiffs "in quantum meruit" for the reasonable value of the work and materials furnished by the plaintiffs, by which we assume it means that GSA is liable on a contract implied in fact.

GSA's preliminary objections are as follows:

1. A petition raising the question of this court's jurisdiction as to all four counts based upon an assertion that the Board of Arbitration of Claims has exclusive jurisdiction.

2. A demurrer on grounds of sovereign immunity as to the trespass counts and on the ground that the plaintiffs were not parties to the contract between GSA and Cubic as to the counts in assumpsit.

3. A petition raising the defense of lack of capacity to sue because the plaintiffs are not alleged to be parties to the contract sued on.

4. A motion to strike for failure to comply in RCP 1020 (d) (1) requiring trespass and assumpsit claims to be stated in separate counts.

The objections raising the defense of lack of capacity to sue and the motion to strike must be dismissed, the first grossly misapprehending the nature of the defense sought to be interposed and the second simply being without merit. GSA argues for neither in its brief.

If the facts alleged by the plaintiff are true, and for the purpose of this decision they must be assumed to be, the administration of the bonding aspects of this contract by GSA was feckless to a degree difficult to ascribe to mere negligence. As a result, the plaintiffs have performed work and supplied materials worth about $81,000 for which there is no security whatsoever despite statutory law and contract provisions especially provided for their protection. It is, therefore, with regret that we decide that they may not under existing law recover, at least in this court.

I. The Demurrer to the Trespass Counts.

The plaintiffs aver in their trespass counts that GSA was negligent in failing to require a proper surety on Cubic's bond, in accepting a bond with insufficient surety, in failing to require adequate surety after becoming aware of the surety's poor financial condition and in making payments to the general contractor when it knew or had reason to know that the plaintiffs were not being paid and that the bond provided inadequate protection.

The complaint itself describes GSA as an instrumentality of state government. Here it was of course engaged in an essential governmental function in contracting to build a public school building. In its actions as such and while so engaged it was immune from liability for negligence. The entire per curiam opinion of the Supreme Court in *Roney v. General State Authority*, 413 Pa. 218, 196 A. 2d 349 (1964), is: "The issue presented on this appeal is whether the doctrine

of governmental immunity applies to appellee, The General State Authority. In Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609, 182 A. 2d 199 (1962), we held that the Pennsylvania Turnpike Commission was an instrumentality of the Commonwealth engaged in a governmental function and hence immune from liability for the negligence of its employees. The reasoning of that case compels an identical result here." In *Szilagyi et al. v. City of Bethlehem*, 312 Pa. 260, 167 A. 782 (1933), subcontractors sued the City of Bethlehem in trespass for negligently failing to procure a labor and materialmen's bond. The Supreme Court there concluded that the statutory duty to procure the bond was governmental and that the negligent failure of the city's employees to perform this duty could impose no liability on the municipality. Justice KEPHART particularly noted that while the statute imposed a duty upon the city to obtain the bond, it prescribed no penalty for failure to do so. Neither does the General State Authority Act of 1949, Act of March 31, 1949, P. L. 372, as amended, 71 P.S. §1707.1 et seq., impose a penalty to provide the bond it requires as a precondition to the award of a contract.

The plaintiffs attack certain of the reasoning of the writer of the *Szilagyi* opinion which we are not impelled to defend, not because we disagree with that reasoning but because argument over dicta is unproductive. However, they contend most insistently that the case of *Jacobs v. Northeastern Corporation*, 416 Pa. 417, 206 A. 2d 49 (1965), broadened the rights of subcontractors in modification of the *Szilagyi* holding. There the Supreme Court held that a surety who has paid labor and materialmen of a defaulting contractor has rights by subrogation in money withheld by the Commonwealth superior to the claims of creditors of the general contractor. While this holding did modify the

import of earlier cases holding that the surety's right to subrogation was based on the existence of the contract contained in the construction contract to pay labor and materialmen,[1] it says nothing about the amenability of the Commonwealth to a suit in trespass by subcontractors seeking payment out of the Commonwealth's own funds for injuries caused by the asserted negligence of its employees with relation to the procurement of the surety bond. *Roney v. General State Authority, supra,* speaks directly to this circumstance and precludes pursuit of plaintiffs' counts in trespass.

The plaintiffs contend, however, that the Legislature having given the GSA the power to "sue and be sued, implead and be impleaded, complain and defend in all courts,"[2] has thereby waived its immunity from suit for the negligent acts of its employes. This contention is not new and it has been rejected. Mr. Chief Justice BELL made a thorough exposition of the subject in *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 182 A. 2d 199 (1962), where it was held that similar language in legislation creating the Pennsylvania Turnpike Commission did not waive immunity from suit in trespass actions. We can discern no difference between the negligence of an employee causing personal injury and that, as here alleged, causing a property loss. We observe, however, that whereas the claimant who suffers personal injury as the result of negligence usually has no means of preventing his loss, the plaintiffs here

---

[1] *Lancaster County National Bank's Appeal,* 304 Pa. 437, 155 A. 859 (1931), held that where such an obligation existed the surety's rights to a fund withheld from the general contractor were superior to those of creditors of the general contractor. In *Sundheim v. Philadelphia School District,* 311 Pa. 90, 166 A. 365 (1933), it was held where no such obligation existed the surety's rights were not superior.

[2] General State Authority Act of 1949, Section 4(b), 71 P.S. §1707.4(a).

had a remedy to enforce the public duty for the breach of which they were claim damages. As stated in *Szilagyi et al. v. City of Bethlehem, supra*: ". . . there is always a remedy to enforce performance of a public duty. It was within the power of those who dealt with the contractor to see that protection was procured, even though the additional bond was not given when their contracts were executed. Where a . . . [municipality] . . . fails to require a contractor . . . to secure an additional bond as required by law . . . the courts will compel the performance of this public duty by mandamus." 312 Pa. at 265, 167 A. at 783.

*Central Contracting Company v. C. E. Youngdahl and Company*, 418 Pa. 122, 209 A. 2d 810 (1965), said by the plaintiffs to indicate a trend toward conferring broader rights on subcontractors, was a suit in assumpsit brought by a subcontractor against the prime contractor in which it sought to attach money owing the prime contractor by a governmental instrumentality. Among other grounds for holding that the Authority was amenable to garnishment process, the court concluded that a "sue and be sued" provision provided a basis for such process. However, the Supreme Court made particular point of distinguishing *Rader v. Pennsylvania Turnpike Commission, supra,* as follows: "There we held that, in view of the fact that roadbuilding was a traditional and, by statute, 'essential governmental function,' the Legislature would not be deemed to have waived the Commonwealth's immunity from tort liability in respondeat superior in the absence of express provisions to that effect, even though the Commission could 'sue and be sued.' Amenability to garnishment process incident to foreign attachment is not analogous to tort liability in respondeat superior." 418 Pa. at 129, 209 A. 2d at 814.

We hold that the doctrine of sovereign immunity bars plaintiff's action to recover for the alleged negligence of GSA.

## II. The Demurrer to the Assumpsit Counts.

GSA's demurrer to the counts of the complaints sounding in assumpsit are founded upon plaintiff's failure to allege either that the plaintiffs were parties to the contract between GSA and Cubic or that GSA was a party to or entered into any contractural relationship with plaintiffs. The complaint indeed avers no promise by the GSA to pay subcontractors nor does it allege any acts of it or any employee which would manifest such a promise. The plaintiffs declare that they are third party beneficiaries of the contract between GSA and Cubic. However, there must be present either an express agreement to pay subcontractors or circumstances implying such an agreement, for as stated by Mr. Chief Justice MAXEY:

"No man has any cause of action against another unless that other is obligated to him. An obligation must be imposed either by law or by contract.

. . . .

"He who pleads an obligation arising from a contract must show the obligor's assent to the assumption of the obligation." *Spires et ux. v. Hanover Fire Insurance Company,* 364 Pa. 52, 59, 62, 70 A. 2d 828, 834, 836 (1950).

As expressed by the Restatement of Contracts, §20: "A manifestation of mutual assent by the parties to an informal contract is essential to its formation and the acts by which such assent is manifested must be done with the intent to do those acts. . . ." With specific reference to third party beneficiaries, whether donee or creditor, the Restatement of Contracts, §133 (1) speaks of ". . . a promise in a contract [which]

will benefit a person other than the promisee. . . ." Assumpsit is a suit to recover damages for the breach of promise; the promise or undertaking on the part of the GSA which the plaintiffs must here declare upon is that it, the GSA, would pay them if the contractor or his surety does not. They have not so pleaded. The only provision of the written contract between GSA and Cubic adverted to is the following: "Should any surety upon the bond or bonds for the performance of the contract and payment of materials and labor become unsatisfactory to the Authority, the contractor must promptly furnish such additional security as may be required from time to time to protect the interest of the Authority and persons supplying the materials and labor or renting equipment to be used in the prosecution of the work required by the contract including any changes therein." This is no more than a promise by Cubic to supply additional security required by GSA.

Plaintiffs further contend that their complaint pleads facts and circumstances sufficient to raise an inference that GSA agreed to pay subcontractors. The facts and circumstances relied on in this regard are the same as those which plaintiffs assert in their claim in trespass; that is, GSA's failure to require Cubic to furnish and maintain a good and sufficient bond. Plaintiffs have directed us to no authority for the proposition that one agrees by implication to redress victims of his negligent conduct and our research has revealed none.

A contract implied in fact arises where there is mutual assent but where assent by the person sought to be charged has been manifested by acts rather than words of promise. As plaintiffs do here, it is sometimes referred to inartfully as a suit on *quantum meruit,* a phrase descriptive of the damages accruing in

many such suits. We find in the instant complaint no allegations of any actions by the GSA which could support an inference that it assented to pay the plaintiffs anything. Acts of extreme negligence and harm to plaintiffs are pleaded but none indicating agreement to compensate for the injuries caused by such conduct. *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A. 2d 796 (1964), upon which plaintiffs rely in this aspect of their case, holds that the purchaser of an airline ticket may maintain a suit in assumpsit for negligent breach by the airline of its *express promise* of carriage. The distinction between that case and this, where defendant neither expressly nor impliedly promised plaintiffs anything, is plain.

Lastly, on this subject, the complaint nowhere charges unjust enrichment of GSA and of course could not because Cubic was paid in full under the contract. There is, therefore, no claim asserted or possible by way of quasi or constructive contract.

For these reasons, the demurrer to the Counts in Assumpsit must also be sustained.

III. The Petition Raising a Question of Jurisdiction.

Ordinarily, a court should first decide whether it has jurisdiction; for if it has none, all else it declares is rankest surplusage. We have deviated from this principle here because a close examination of plaintiffs' cause seems necessary to an understanding of the jurisdictional question.

The GSA says that if any tribunal has jurisdiction of the plaintiffs' cause it is the Board of Arbitration of Claims under the Act of May 20, 1937, P. L. 728, No. 193, as amended, 72 P.S. §4651-1 et seq., because the contract between GSA and Cubic refers questions and disputes to that Board. *Cf. J. L. Turner Company v.*

*The General State Authority,* 41 D. & C. 2d 118 (1966). The plaintiffs answer that under that Act, the Board's jurisdiction is limited to the arbitration of claims of persons who are signatories of contracts with the state.

Section 509(e)(2) of the Appellate Court Jurisdiction Act of 1970, July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.509(e)(2), specifically immunizes from the effects of that act the "authority, power and jurisdiction of the Board of Arbitration of Claims." The Act of 1937 creating the Board of Arbitration of Claims confers upon the Board the duty "to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth"[3] and further provides that it "shall have jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth."[4] The plaintiffs contend that these clauses are irreconcilable and that, therefore, the provision of Section 4 being second in order should control[5] and that Section 4 means that only persons who are signatory parties to a contract with the Commonwealth may bring any action before the Board. We are required to reconcile statutory provisions if this can be done consistently with the main purpose of the enactment. *Cammie v. I.T.E. Circuit Breaker Company,* 151 Pa. Superior Ct. 246, 30 A. 2d 225 (1943). The main purpose of the Act creating the Board of Arbitration of Claims was to provide a comprehensive plan to arbitrate claims arising from contracts entered into by the Commonwealth. *Road Machinery, Inc. v. Commonwealth,* 88 Dauphin 1 (1967). By both Sections 1 and 4 of the Act, the Board is given jurisdiction to hear and determine "claims

[3] By Section 1, 72 P.S. §4651-1.

[4] By Section 4, 72 P.S. §4651-4.

[5] By Section 64 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P. S. §564.

against the Commonwealth arising from contracts." The reference of Section 1 to contracts entered into *by* the Commonwealth, and that of Section 4 to contracts entered into *with* the Commonwealth import one concept—that the Commonwealth has consented to suit before the Board upon claims based upon obligations of the state arising from contracts made by it. This, we believe, certainly includes any claim based upon alleged contract liability of the Commonwealth regardless of whether the claimant happens to have executed a written contract. Neither *Highway Paving Company v. Board of Arbitration of Claims*, 407 Pa. 528, 180 A. 2d 896 (1962), nor the single phrase quoted from *Gann-Dawson, Inc. v. Commonwealth*, 41 D. & C. 2d 355 (1966), cited by plaintiffs are authority to the contrary. Indeed, we believe that our broader view of the Board's jurisdiction is supported by the following from Judge BOWMAN'S opinion in the latter case.

"So long as appellant remains unpaid *by the Commonwealth* upon a claim arising out of a contract to which the Commonwealth is a party, we believe the plain meaning of the statute confers jurisdiction upon the board over the subject matter of the controversy. . . . And the limited channels through which one having a claim against the State must guide his course or founder upon the shoals of sovereign immunity from suit suggest that the legislature, in impairing this immunity, intended broad jurisdiction in the board over claims against the Commonwealth founded in contracts to which the State itself is a party.

"We recognize, of course, that the vast majority of claims presented to and entertained by the board involve disputes between the agency of the Commonwealth which executed a contract on its behalf and the other party to the contract. This fact alone, however, is no reason to restrict the otherwise plain meaning of

the legislature, affording jurisdiction to the board to hear *all claims* against the Commonwealth." 41 D. & C. 2d at 358, 359.

Our determination that the Board of Arbitration of Claims has jurisdiction of any claims against the Commonwealth arising from its contracts, including those of persons not signatories of contracts executed in behalf of the state, compels the conclusion that this court has no jurisdiction of plaintiffs' assumpsit counts. Our conclusion that the plaintiffs' amended complaint failed to state a cause of action in assumpsit is not, however, wholly supererogatory. We are advised that the plaintiffs have filed timely claims with the Board,[6] which have been stayed pending this decision. Those claims may contain averments of fact not here pleaded supporting recovery in assumpsit. Further, if the appellants have claimed in trespass before the Board, that judicial tribunal can first decide the issue of whether the Commonwealth has consented to suits before it in trespass arising from the asserted negligence of its agencies in the administration of contracts to which the Commonwealth is a party.

The preliminary objections are sustained, and the plaintiffs' amended complaint is dismissed.

---

OPINION BY JUDGE KRAMER (CONCURRING IN PART AND DISSENTING IN PART):

I concur with the majority that the Preliminary Objections to the counts of the Complaint in Assumpsit should be sustained; but I respectfully dissent from the majority's sustaining the Preliminary Objections to the counts of the Complaint in Trespass.

The General State Authority (GSA) was patently organized as a means to circumvent former constitu-

---

[6] To which, we are further advised, GSA has filed preliminary objections asserting that the Board has no jurisdiction.

532

tional limitations on governmental indebtedness. GSA over the years of its existence (since its creation in 1935), has competitively engaged in the business of land and building development similar to countless business enterprises operated in the private sector. From my point of view, GSA is engaged primarily in a proprietary function and only secondarily in a governmental function.

It seems incongruous to me to permit an injured citizen to sue in trespass for torts inflicted by a public school district acting in a proprietary function in the operation of its school facilities, and yet deny such a citizen the same right if he is injured by some state "Authority" engaged in a proprietary function of erecting a school facility. See *Morris v. Mt. Lebanon Township School District*, 393 Pa. 633, 144 A. 2d 737 (1958). If the Commonwealth (or its subdivisions) determines to enter the private business world of the land and building developer (in a manner similar to, for example, an insurance company), then it should accept all of the liabilities and responsibilities inherent in such proprietary business activities. In making this statement, I fully recognize the present status of the law in this Commonwealth on sovereign immunity, that neither the Commonwealth nor any of its state instrumentalities may be sued without legislative permission. However, as I have attempted to state in my dissent in the case of *Biello v. Pa. Liquor Control Board, et al.*, 1 Pa. Commonwealth Ct. 179 (1971), our courts should be consistent. The judicially created distinction between governmental and proprietary functions applied to the municipal and educational segments of government should be applied consistently and equally to all segments of goverment.

The majority points to the *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A. 2d 199

(1962) case as controlling; however, the facts of that case are distinguishable. The present state of the law on sovereign immunity in this Commonwealth recognizes the construction, maintenance and operation of highways for commerce as a governmental function in the furtherance of public convenience and necessity. The construction of a "field house" can hardly be placed in the same functional category. I would overrule the Preliminary Objections as to the counts in trespass and allow GSA time to file an answer.

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

While I reiterate the position I took in my dissenting opinion in *Lovrinoff, et al. v. Pennsylvania Turnpike Commission*, 3 Pa. Commonwealth Ct. 161, 281 A. 2d 176 (1971), and reaffirmed in my concurring opinion in *Brown, et al. v. National Guard*, 3 Pa. Commonwealth Ct. 457 (1971), for the reasons stated in *Brown* I concur in today's decision.