## Powers Regulator Co. v. Triangle Mechanical, Inc.

*Michael J. Clement,* for plaintiff.
*Matthew M. Strickler,* for Temple University.

STANZIANI, *J.*, November 21, 1978—

## FACTS

On April 18, 1978, plaintiff instituted this action against Triangle Mechanical, Inc. (hereinafter Triangle), now insolvent, and Temple University (hereinafter University) seeking damages of $3,900 for unpaid labor and materials supplied by plaintiff under a subcontract with Triangle for the installation of an automatic temperature system at the Department of Psychology, Temple Hospital. The University has filed preliminary objections in the nature of a demurrer alleging that plaintiff has failed to plead sufficient facts to recover either as a third party beneficiary of the Temple University-Triangle contract or on a trespass theory for the University's granting of the contract without the payment bond required by the Public Works Contractors' Bond Law of December 20, 1967, P.L. 869, sec. 3, 8 P.S. §193.

## ISSUES

1. Does the Public Works Contractors' Bond Law of 1967 create an affirmative duty on the part of a State-aided institution to ensure that a payment bond has been obtained by the prime contractor for the protection of a subcontractor who supplies labor and material to the prime contractor?
2. Has plaintiff stated a valid cause of action in

trespass against the University for the negligent breach of duty to ensure that a payment bond was obtained by the prime contractor?

3. Has plaintiff stated a valid cause of action in assumpsit against the University as a third party creditor beneficiary under the contract between the University and the prime contractor?

## DISCUSSION

### Issue 1

Plaintiff's cause of action in this case is dependent on the existence of a duty owed by the University to plaintiff to ensure that a payment bond had been provided by Triangle for plaintiff's protection. It is asserted that this duty is contained in the Public Works Contractors' Bond Law of 1967 which provides:

"§193. Bonds required; types; sureties; filing

"(a) Before any contract exceeding five thousand dollars ($5,000) for the construction, reconstruction, alteration or repair of any public building or other public work or public improvement, including highway work, of any contracting body is awarded to any prime contractor, such contractor shall furnish to the contracting body the following bonds, which shall become binding upon the awarding of said contract to such contractor: . . .

"(2) A payment bond at one hundred percent of the contract amount. Such bond shall be solely for the protection of claimants supplying labor or materials to the prime contractor to whom the contract was awarded, or to any of his subcontractors, in the prosecution of the work provided for in such contract, and shall be conditioned for the prompt payment of all such material furnished or labor

supplied or performed in the prosecution of the work. 'Labor or materials' shall include public utility services and reasonable rentals of equipment, but only for periods when the equipment rented is actually used at the site."

Although responsibility for obtaining a payment bond is imposed on the prime contractor, this section makes obtaining such a bond a condition precedent to the award of any contract exceeding five thousand dollars.

As noted in plaintiff's brief, the Public Works Contractors' Bond Law of 1967 is a legislative consolidation of preexisting piecemeal statutes pertaining to construction of public projects by various political subdivisions of the Commonwealth. Section 10 of the 1967 Bond Law, 8 P.S. §200, repeals prior legislation, *but only insofar as it is inconsistent with the Act of 1967.* Our review of these prior statutes indicates a definite legislative intent to impose an affirmative obligation on the contracting party to ensure that provision is made for the payment of subcontractors on public construction projects. The Public School Code of March 10, 1949, P.L. 30, art. VII, sec. 756, 24 P.S. §7-756, provides:

"It shall be the duty of every school district to require any person . . . entering into [a construction project] with such district, . . . before commencing work under such contract to execute and deliver to such school district, . . . an additional bond . . . conditioned for the prompt payment of all material furnished and labor supplied or performed . . . in the prosecution of the work . . ."

A similar duty was imposed on municipalities (i.e., county of the first class, city, incorporated town and poor district) under the Act of June 22,

1931, P.L. 880, sec. 1, 53 P.S. §1291 et seq.; on cities of the third class under section 1905, renumbered section 1907, Act of June 23, 1931, P.L. 932, known as The Third Class City Code, reenacted and amended June 28, 1951, P.L. 662, 53 P.S. §36907; on townships under section 1804, Act of June 24, 1931, P.L. 1206, known as The First Class Township Code, as reenacted and amended May 27, 1949, P.L. 1955, 53 P.S. §56804. The same affirmative duty was imposed under numerous other acts. See Act of December 20, 1967, P.L. 869, sec. 11, 8 P.S. §201.

Furthermore, our reading of the Public Works Contractors' Bond Law of 1967 does not reveal any provisions which are inconsistent with the affirmative duty contained in prior legislation. Both the pre-1967 statutes and the law of 1967 were enacted primarily to protect subcontractors who supplied labor or materials to the prime contractors. This is in keeping with the public policy of the Commonwealth to assure that subcontractors are paid. The Public Works Contractors' Bond Law of 1967 was designed to protect the contracting body (i.e., the University) by assuring faithful performance *and* to provide a substitute remedy for subcontractors who supply labor and materials and are excluded from the protection of the Mechanics Lien Law of August 24, 1963, P.L. 1175, art. III, sec. 303(b), 49 P.S. §1303; Valley Forge Industries, Inc. v. Armand Const., Inc., 248 Pa. Superior Ct. 53, 374 A. 2d 1312 (1977). Moreover the title of the 1967 Act indicates the legislature's intent to create "a *uniform and mandatory system* governing the requirement of bonds. . . ." Act of December 20, 1967, P.L. 869. We therefore conclude that under the Public Works Contractors' Bond Law of 1967, a mandatory duty

was owed by the University to plaintiff to ensure that Triangle had furnished a payment bond before *the construction contract was awarded.*

## Issue 2

Having established that the University owed plaintiff this duty, we must determine whether an action in trespass will lie against the University for the negligent breach of that duty. Plaintiff has urged us to adopt the holding of Strathman v. Upper Darby Twp., 21 Delaware Co. 429 (1931), which permitted a subcontractor to bring an action against the municipality for its negligent failure to require a payment bond. In Strathman, however, defendant was a municipal corporation, and the decision was based on the court's determination that "the function of the municipality in requiring an additional bond for the protection of subcontractors certainly cannot be held to be public or governmental." Id. at 441. In the case at bar we need not become involved with the characterization of defendant's activity as proprietary or governmental. Although under the Act of November 30, 1965, P.L. 843, sec. 3, 24 Pa. §2510-3, the University is made part of the Commonwealth system of higher education, it nonetheless "shall continue as a corporation for the same purposes as, and with all rights and privileges heretofore granted to, Temple University, unless hereinafter modified or changed." No other provision of the Temple University-Commonwealth Act alters the private corporate status of defendant University for purposes of suit. Thus defendant, although providing the same educational service as a State college or university, is not an instrumentality of the Com-

monwealth engaged in the governmental function of higher education and is not, therefore, exempt from liability for negligence by reason of sovereign immunity. Cf., Finkelstein v. Shippensburg State College, 29 Pa. Commonwealth Ct. 373, 370 A. 2d 1259 (1977), Butler v. Cheyney State College, 61 D. & C. 2d 60 (1973). Were this not the case, plaintiff's trespass action would be foreclosed by the Commonwealth Court's decision in Armour Rentals, Inc. v. General State Authority, 4 Pa. Commonwealth Ct. 517, 287 A. 2d 862 (1972). Given defendant's private corporate status for purposes of suit, we hold that plaintiff may pursue its action in trespass against defendant.

## Issue 3

The same result is not obtained with respect to plaintiff's second count in assumpsit which is based on a third party beneficiary theory of recovery. In Armour Rentals Inc. v. General State Authority, supra, the plaintiff asserted exactly the same third party beneficiary theory as a basis for a claim in assumpsit. The Commonwealth Court noted that in order for plaintiff to establish this cause of action, the obligor's assent to the assumption of the obligation in the contract must be pled. It may well be, as averred in the complaint, that the prime contract contained a promise by Triangle to provide a payment bond for plaintiff's benefit and protection, but plaintiff has not pled any contractual promise by the University to pay plaintiff in the event that Triangle did not. In a contract action of this nature, there must be present either an express agreement to pay the subcontractor or circumstances implying such an agreement. Clearly the

University made no express agreement. A contract implied in fact arises where there is a *mutual* assent, but where the assent by the person sought to be charged has been manifested by acts rather than words of promise: Armour Rentals Inc. v. General State Authority, supra, at 527. Plaintiff has not pled any facts or circumstances which would warrant an inference by this court that the University assented to be a surety for Triangle's default.

Plaintiff's third party beneficiary theory, in effect, attempts to transform the statutory duty imposed on the University into an affirmative contractual promise by the University to redress the victims of their allegedly negligent conduct. The Public Works Contractors' Bond Law of 1967 does impose a duty of care on the University, but it cannot be construed to function as promise by the University to accept Triangle's obligation to pay subcontractors in the absence of a payment bond. To do so would require us to ignore the basic distinction between the violation of a legal duty which gives rise to plaintiff's action in trespass and the absence of a promise which is fatal to plaintiff's action in assumpsit. This case arises from the alleged breach of a statutory duty which must be distinguished from the breach of an obligation originating from a promise. Accordingly, we find that plaintiff has not pled any promissory obligation owed to him by the University under the prime contract with Triangle and therefore count II of the complaint fails to state a cause of action in assumpsit.

## ORDER

And now, November 21, 1978, after consideration of the arguments and briefs of counsel, defendant's

preliminary objection in the nature of a demurrer with respect to count II of the complaint is granted. Defendant's preliminary objection with respect to count III of the complaint is denied.